LARRY M. GANDY, Appellant, v. THE STATE OF NEVADA ex rel. DIVISION OF INVESTIGATION AND NARCOTICS, Respondent.

No. 10614

March 13, 1980                               607 P.2d 581

*Fahrenkopf, Mortimer, Sourwine, Mousel & Pinkerton,* of Reno, for Appellant.

*Richard H. Bryan,* Attorney General; and *Patrick J. Mullen* and *Ernest Adler,* Deputy Attorneys General, for Respondent.

## OPINION

By the Court, THOMPSON, J.:

The Chief of the State Division of Investigation and Narcotics dismissed Larry Gandy from his position as a supervising narcotics agent. Gandy contested his termination from state service. A hearings officer ordered his reinstatement. The State appealed that ruling to the Personnel Advisory Commission. That Commission sustained the hearings officer. The State then sought court review. The district court overruled the Commission, ordering the dismissal of Gandy from state service. This appeal followed.

When a decision of an administrative body is challenged, the function of this court is identical to that of the district court. It is to review the evidence presented to the administrative body and ascertain whether that body acted arbitrarily or capriciously, thus abusing its discretion.[1] This limitation upon court review is written into the Administrative Procedure Act, NRS ch. 233B, pursuant to which the instant dispute was processed. It is there provided that court review is confined to the record before the agency, NRS 233B.140(4); that the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact, NRS 233B.140(5); and

[1]See: Nevada Industrial Comm'n v. Reese, 93 Nev. 115, 560 P.2d 1352 (1977); Miller v. West, 88 Nev. 105, 493 P.2d 1332 (1972); City of Reno v. Folsom, 86 Nev. 39, 464 P.2d 454 (1970); Bd. of Chiropractic Exam'rs v. Babtkis, 83 Nev. 385, 432 P.2d 498 (1967); Urban Renewal Agcy. v. Iacometti, 79 Nev. 113, 379 P.2d 466 (1963).

that the agency decision may be reversed, inter alia, if clearly erroneous, or arbitrary and capricious. NRS 233B.140(5)(e)(f); Nevada Industrial Comm'n v. Reese, 93 Nev. 115, 560 P.2d 1352 (1977).

Our review of the record before the Personnel Advisory Commission leads us to conclude that it acted well within its discretionary authority. Consequently, we reverse the district court and reinstate the decision of the Commission. We turn to relate relevant facts and controlling case authority.

Larry Gandy, while acting as a supervising narcotics agent, was involved in the arrest of David Formby. Force was used to subdue Formby. Subsequently, Formby commenced suit against the State seeking damages for an alleged wrongful assault upon him by Gandy. That case was settled out of court. Thereafter, an investigation of the arrest incident was conducted by the Chief of the Division of Investigation and Narcotics. Gandy was questioned by the Chief and denied striking Formby while handcuffed, and denied the use of excessive force.

Upon conclusion of Formby's civil action, the Chief was allowed to interview a witness to the incident. His version differed from Gandy's. Consequently, the Chief ordered Gandy to take a polygraph exam. Gandy was notified of the order by his superior in the Las Vegas office and was informed that criminal prosecution was anticipated unless he resigned. Gandy refused to answer the order or resign until he could contact his attorney. Acting upon the advice of counsel, Gandy refused to take the polygraph, and the Chief of the Division was so notified. Ten days later he was given a notice of termination "for willful insubordination in failing to take a polygraph test." Gandy was not informed that if he took the polygraph test the questions asked him would relate specifically and narrowly to the performance of his official duty. Neither was he advised that his answers could not be used against him in any subsequent criminal prosecution. Nor was he informed that the penalty for refusing to take the polygraph exam would be dismissal.

---

1.    The fifth amendment privilege against self-incrimination is applicable to state as well as federal proceedings. Malloy v. Hogan, 378 U.S. 1 (1964); Murphy v. Waterfront Comm'n, 378 U.S. 52 (1964). One may not be discharged from service simply because he invokes that privilege. Gardner v. Broderick, 392 U.S. 273 (1968); Spevack v. Klein, 385 U.S. 511 (1967). A public employee may, however, subject himself to dismissal if

he refuses to account for his performance of the public trust, after proper proceedings, which do not involve an attempt to coerce him to relinquish his constitutional rights. Sanitation Men v. Sanitation Comm'r, 392 U.S. 280 (1968); Gardner v. Broderick, supra. This protection against coerced statements prohibits use in a subsequent criminal prosecution of statements obtained under threat of removal from office, and this protection extends to all, whether policemen or other members of our body politic. Garrity v. New Jersey, 385 U.S. 493 (1967). On the other hand, answers may be compelled regardless of the privilege if there is immunity from federal and state use of such compelled testimony or its fruits in connection with a criminal prosecution against the person testifying. Murphy v. Waterfront Comm'n, supra.

Although the words "proper proceedings" as used in Sanitation Men v. Sanitation Comm'r, supra, have not specifically been defined by the United States Supreme Court, a recent federal court decision has interpreted them to mean a proceeding in which the employee is asked pertinent questions about the performance of his duties and is duly advised of his options and the consequences of his choice. Uniformed S.M. Ass'n, Inc. v. Commissioner of S. of N.Y., 426 F.2d 619 (2d Cir. 1970). And, in Kalkines v. United States, 473 F.2d 1391 (Ct. Cl. 1973), the court deemed being advised of the consequences of his choice to include advice that he is subject to discharge for not answering and that his replies and their fruits cannot be used against him in a criminal case.

By reason of the mentioned United States Supreme Court cases it is now recognized that an employee who is ordered to take a polygraph examination must be informed that the questions will relate specifically and narrowly to the performance of his official duty; that the answers cannot be used against him in any subsequent criminal prosecution, and that the penalty for refusing to answer is dismissal. Seattle Police Officers' Guild v. City of Seattle, 494 P.2d 485 (Wash. 1972); Eshelman v. Blubaum, 560 P.2d 1283 (Ariz.App. 1977); Roux v. New Orleans Police Department, 223 S.2d 905 (La.App. 1969).

The Personnel Advisory Commission found that such procedural safeguards were not accorded Larry Gandy. It also found that Gandy would have submitted to a polygraph examination had he known that the penalty for failing to do so would be dismissal. The record of evidence before the Commission supports those findings. Upon review, the district court was bound

to sustain the Commission.[2] When it failed to do so, it substituted its judgment for that of the Commission on questions of fact in violation of NRS 233B.140(5).

2.  We need not decide whether it is permissible to require a polygraph examination as a condition of continued employment, and defer that issue to some other time and case.

Reversed, with direction to enter judgment for Gandy for lost pay and benefits from August 1, 1975, to March 12, 1976, the date upon which he resigned from state service, together with interest, and costs below on appeal.

MOWBRAY, C. J., and GUNDERSON, MANOUKIAN, and BATJER, JJ., concur.

---

[2]The district court found that Gandy had waived his fifth amendment privilege. There is no evidence of such waiver. The district court found that Gandy's unequivocal refusal to take the polygraph test rendered it unnecessary to advise him of the consequences of his refusal. The cases cited emphasize an affirmative duty on the part of the employer to advise the employee of the consequences.