*1400 OPINION

Per Curiam:

On September 13, 1985, appellant Neal Seader (“Seader”) suffered an industrial injury to his lower back while working as a fire fighter for the Clark County Fire Department (“fire department”). Seader was attempting to lift a three-inch hose, which weighed approximately 120 pounds, when he felt a pop in his lower back. Seader was treated for his injury and given a full duty release by his treating physician. Seader reinjured his lower back in 1986 and was again given a full duty release. Seader’s claim was closed in 1986 without a permanent partial disability award.
In 1987, Seader realized he could no longer perform his duties as a fire fighter, and he decided to retire. At the age of fifty, and with more than twenty years experience as a fire fighter, Seader officially retired in December 1987.
After Seader’s retirement, his back condition progressively deteriorated. Due to his worsening condition, Seader’s industrial claim was reopened pursuant to NRS 616.545.[1] After several consultations, Seader’s physician, Dr. Russell Nelson (“Nelson”), fused some disks in the lower lumbar region of Seader’s back. On February 16, 1993, Nelson released Seader to resume working with several restrictions.[2]
On March 25, 1993, Dr. Theodore A. DiAmico (“DiAmico”) performed a permanent partial disability evaluation on Seader. DiAmico recommended a sixteen percent permanent partial disability impairment. Seader accepted this recommendation and *1401 elected to receive a lump sum payment of $22,063.02 for his permanent partial disability. Seader’s acceptance of the lump sum payment did not waive his right to receive vocational rehabilitation benefits.
After his claim was reopened, Seader requested vocational ■rehabilitation benefits[3] to assist him in finding gainful employment. On April 7, 1993, the fire department’s insurer (“insurer”) denied Seader’s request for vocational rehabilitation benefits. On April 16, 1993, Seader appealed that decision to a hearing officer. On May 13, 1993, the hearing officer affirmed the insurer’s determination. Seader appealed the hearing officer’s decision to the appeals officer. The appeals officer affirmed the hearing officer’s decision. Seader appealed the appeals officer’s decision to the district court. The district court affirmed the appeals officer’s decision.
Seader appeals to this court, arguing that the district court erred in affirming the appeals officer’s decision which denied him vocational rehabilitation benefits.

DISCUSSION

Standard of Review

This court has continuously recognized that review of an administrative decision is limited. Apeceche v. White Pine County, 96 Nev. 723, 725, 615 P.2d 975, 977 (1980). In Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 282, 607 P.2d 581, 582 (1990), this court stated that “[w]hen a decision of an administrative body is challenged, the function of this court is identical to that of the district court. It is to review the evidence presented to the administrative body . . . .’’In Apeceche, this court further stated that “the function of this court ... is to review the evidence presented to the administrative body and ascertain whether that body acted arbitrarily or capriciously, thus abusing its discretion.” Apeceche, 96 Nev. at 725, 615 P.2d at 977 (citations omitted). The Apeceche court stated that this court “may not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.” Id.
Agency decisions “may be reversed if substantial rights of [an] appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.” Id. (citing NRS 233B.140(5)(e)).
*1402 A far less deferential standard of review is appropriate when this court is considering the interpretation of a statute because this situation involves a question of law. Maxwell v. SIIS, 109 Nev. 327, 329, 849 P.2d 267, 269 (1993) (citing Nyberg v. Nevada Indus. Comm’n, 100 Nev. 322, 324, 683 P.2d 3, 4 (1984)). Consequently, this court may independently review an agency’s decision when the interpretation of a statute is at issue. Id.

Question of Fact or Law

Seader argues that the appeals officer’s decision to deny his request for vocational rehabilitation benefits constituted an error of law.
The insurer claims that the appeals officer’s decision was a factual determination in which the appeals officer decided that Seader was not eligible for vocational rehabilitation benefits because he had voluntarily retired from the fire department. Furthermore, the insurer contends that Seader is no longer eligible to qualify for vocational rehabilitation benefits because he is no longer an employee.
The issue before this court is whether Seader’s retirement from the fire department precludes his entitlement to vocational rehabilitation benefits after his claim has been reopened. We conclude that NRS 616.545, as it existed when Seader requested vocational rehabilitation benefits, did not preclude Seader’s entitlement to those benefits.
In 1993, the legislature specifically addressed the issue before this court. In its revision to NRS 616.545(6), the legislature provided that “[i]f an employee’s claim is reopened pursuant to this section, he is not entitled to vocational rehabilitation services or benefits for a temporary total disability if, before his claim was reopened, he: (a) [r]etired . . . .” However, this revision to the statute was not in effect at the time of Seader’s request for vocational rehabilitation benefits following his surgery in 1992.
At the time of Seader’s request, NRS 616.545(l)(a) stated that “[i]f a change of circumstances warrants an increase or rearrangement of compensation during the life of an injured employee, application shall be made therefor.” The insurer does not deny that Seader was entitled to reopen his claim and receive the $22,063.02 lump sum payment for his permanent partial disability. The insurer does, however, deny that Seader was entitled to vocational rehabilitation benefits when his claim was reopened.
In light of the definition of “compensation” in NRS 616.045, *1403 we conclude that Seader was entitled to vocational rehabilitation benefits when his claim was reopened in 1990. NRS 616.045 states that “ ‘[c]ompensation’ means the money which is payable to an employee or to his dependents as provided for in this chapter, and includes benefits for funerals, accident benefits and money for rehabilitative services.” (Emphasis added.)
The vocational rehabilitation benefits sought by Seader after his claim was reopened are included in the definition of compensation. We conclude that denying those benefits to Seader was an error in interpreting a statute and not a factual determination by the appeals officer. Accordingly, the appeals officer’s decision, subsequently affirmed by the district court, was clearly erroneous.
The legislature has closed the “loophole” in NRS 616.545 which, prior to October 1, 1993, allowed retired injured employees the right to vocational rehabilitation benefits after their claims were reopened. Therefore, our opinion will have little effect on future retired employees’ rights to vocational rehabilitation benefits after their claims have been reopened.

Frustration of statutory scheme

The insurer contends that Seader’s voluntary retirement frustrates the worker’s compensation priority for returning injured employees to work.[4] According to the insurer, once Seader voluntarily removed himself from the work force, the insurer was no longer able to follow the priorities set forth under NRS 616.378.
We conclude that the insurer’s contention fails for two reasons. First, without delving into the abyss of whether Seader’s retirement was voluntary or involuntary, we conclude that Seader did not intend to entirely remove himself from the workplace when he retired in 1987. Seader planned on supplementing his retirement benefits with income from other employment. Seader has *1404 worked, albeit briefly, at several jobs since retiring from the fire department.
Second, we conclude that the insurer was not precluded from following the priorities for rehabilitation set forth in NRS 616.378. Due to Seader’s worsening back condition, which prohibited him from performing the requisite duties of a fire fighter, the insurer was effectively precluded from returning Seader to his former occupation. However, the insurer was not precluded from following the other priority provisions of NRS 616.378. At the very least, the insurer could have trained Seader for another vocation as is provided in NRS 616.378(5).

CONCLUSION

We conclude that denying Seader vocational rehabilitation benefits when his claim was reopened constituted an error of law. We also conclude that the statutory scheme of NRS 616.378 will not be frustrated by awarding Seader vocational rehabilitation benefits in the present case. Accordingly, we reverse the district court’s order which affirmed the appeals officer’s decision, and order the appeals officer to grant Seader vocational rehabilitation benefits consistent with the reasoning in this opinion.

NRS 616.545, as it existed at the time Seader’s claim was reopened, stated in pertinent part that a claim could be reopened “[i]f a change of circumstances warrants an increase or rearrangement of compensation during the life of an injured employee . . . .”

Nelson’s release of Seader contained the following restrictions:
1. Occasional lifting up to thirty pounds;
2. No repetitive lifting over 20 pounds;
3. No frequent lifting at all; and
4. No twisting, turning or repetitive bending.

NRS 615.140 defines vocational rehabilitation services as “any goods and services necessary to render a handicapped individual fit to engage in a gainful occupation, or to determine his rehabilitation potential.”

NRS 616.378 sets forth the priorities for returning an injured employee to work as follows:
An insurer shall adhere to the following priorities in returning an injured employee to work:
1. Return the injured employee to the job he had before his injury.
2. Return the injured employee to a job with the employer he worked for before his accident that accommodates any limitation imposed by his injury.
3. Return the injured employee to employment with another employer in a job that uses his existing skills.
4. Provide training for the injured employee while he is working in another vocation.
5. Provide formal training or education for the injured employee in another vocation.