FERNO DUBRAY, Appellant, *v.* COEUR ROCHESTER INC; STATE INDUSTRIAL INSURANCE SYSTEM; DEPARTMENT OF ADMINISTRATION—APPEALS OFFICE and ROBERT SCHOUWEILER, Appeals Officer, Respondents.

No. 25883

April 3, 1996                                    913 P.2d 1289

[Rehearing denied November 21, 1997]

*Nancyann Leeder,* Nevada Attorney for Injured Workers, Carson City, for Appellant.

*Marshall, Hill, Cassas & deLipkau,* Reno; *Lenard Ormsby,* General Counsel, and *Mark A. Marsh,* Carson City, for Respondents.

## OPINION

By the Court, YOUNG, J.:

Appellant Ferno L. Dubray ("Dubray") became ill while working as a welder/mechanic for respondent Coeur Rochester Inc. ("Coeur Rochester") and was eventually diagnosed with Parkinson's disease and hypothyroidism. The appeals officer determined that Dubray's illnesses were not work related. Subsequently, the district court, reasoning that there was substantial evidence to support the appeals officer's decision, denied Dubray's petition for judicial review.

Dubray appeals, arguing, among other things, that there was insufficient evidence to support the appeals officer's decision.

### DISCUSSION

This court has continuously recognized that "[w]hen a decision of an administrative body is challenged, the function of this court is identical to that of the district court. It is to review the evidence presented to the administrative body and ascertain whether that body acted arbitrarily or capriciously, thus abusing its discretion." Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 282, 607 P.2d 581, 582 (1980) (citations omitted). The *Gandy* court further stated that this court "may not substitute its judgment for that of the agency on questions of fact." *Id.; see also* NRS 233B.135(3). Furthermore, this court must "affirm the decision of the administrative agency on questions of fact if the decision is supported by substantial evidence in the record." SIIS v. Thomas, 101 Nev. 293, 295, 701 P.2d 1012, 1014 (1985).

Accordingly, because the present case deals with a question of fact, our review is limited to determining whether the appeals officer's decision was supported by substantial evidence in the record. Our precedents mandate that if the appeals officer's decision was supported by substantial evidence in the record, we must affirm that decision. *See* State, Emp. Sec. Dep't v. Weber, 100 Nev. 121, 124, 676 P.2d 1318, 1320 (1984).

This court has defined substantial evidence as "that quantity and quality of evidence which a reasonable man could accept as adequate to support a conclusion." Maxwell v. SIIS, 109 Nev. 327, 331, 849 P.2d 267, 270 (1993) (citing State, Emp. Security v. Hilton Hotels, 102 Nev. 606, 608 n.1, 729 P.2d 497, 498 n.1 (1986)).

In the present case, the appeals officer made the following

findings of fact: (1) Dubray was exposed to manganese fumes for a maximum of six to eight hours; (2) Dubray was not exposed to Nordbak fumes; and (3) the expert testimony established that the limited exposure to manganese fumes could not cause Parkinson's disease or hypothyroidism. Although we sympathize with Dubray, our review of the record indicates that the appeals officer's decision was supported by substantial evidence. Consequently, the law dictates that we must uphold the appeals officer's decision, subsequently affirmed by the district court.

The dissent maintains that the appeals officer's decision that Dubray was exposed to manganese fumes for a maximum of eight hours was clearly erroneous because Dubray was "frequently" and on a "daily" basis exposed to manganese fumes. According to the dissent, this frequent exposure apparently occurred when Dubray performed his required job duties of welding manganese rods and cutting manganese-epoxy liners, in addition to working "downwind" from those working with manganese hardened steel. Even so, we conclude that the appeals officer's decision that Dubray was exposed to manganese fumes for a maximum of eight hours is supported by substantial evidence.

Dubray and Coeur Rochester agree that Dubray worked for Coeur Rochester for only forty-one days. In addition, the record clearly shows that Dubray cut liners using mangjet rods, which could cause exposure to manganese fumes, on only three occasions. Also, the record reveals that on another occasion, Dubray might have been indirectly exposed to manganese fumes when another welder cut liners. The record further reveals that cutting liners takes an average of two hours. Therefore, if Dubray cut liners on three occasions and was exposed to manganese fumes indirectly on a fourth occasion, Dubray may have been exposed to manganese fumes for a maximum of eight hours.

The dissent next contends that the same evidence of Dubray's "frequent" and "daily" exposure to manganese fumes overwhelmingly indicates that Dubray was also exposed to epoxy-type fumes. We conclude, however, that the appeals officer's decision that Dubray was not exposed to Nordbak fumes, the epoxy-type fumes referred to by the dissent, is also supported by substantial evidence. There was undisputed testimony that Nordbak is contained in the liners several inches below where they are cut. Additionally, there was further undisputed testimony that if a flame from welding comes into contact with Nordbak, it would invariably "blow back on him [the welder], causing him burns." Because an incident such as this did not occur, the appeals officer concluded that Dubray was not exposed to Nordbak.

Finally, substantial evidence supports the appeals officer's decision that Dubray's limited exposure to manganese fumes could not cause Dubray's illnesses. During the hearing, Dubray presented three expert witnesses—Dr. Charles E. Quaglieri ("Quaglieri"), Selina Bendix, Ph.D. ("Bendix") and Dr. Gregory Luke Smith ("Smith"). Quaglieri maintained that Dubray displayed symptoms of Parkinson's disease. However, Quaglieri had no opinion as to how long a person would have to be exposed to manganese fumes in order to develop Parkinson's disease. Bendix testified that if Dubray was exposed to manganese fumes for only a few hours, and not to any Nordbak fumes, it would not be enough to cause Parkinson's disease. Smith stated that if Dubray was exposed to manganese fumes for only twelve hours,[1] then that "would not be a clinically significant exposure and would not cause Parkinsonism."

The appeals officer also heard testimony from expert witnesses called by Coeur Rochester—Dr. Steven McCurdy ("McCurdy") and Dr. Michael Johnson ("Johnson"). McCurdy, along with Dr. John Johnstone ("Johnstone") who did not testify at the hearing, found that Dubray clearly suffered from Parkinson's disease and hypothyroidism. However, McCurdy and Johnstone concluded that it was unlikely that Dubray's illnesses were caused by his exposure to manganese fumes while working at Coeur Rochester. In addition, McCurdy testified that he searched medical sources for cases like Dubray's and could not find a single case in which Parkinson's disease was caused by such limited exposure to manganese fumes. McCurdy further testified that Parkinson's disease is idiopathic (i.e., it is inconclusive what the cause might be).

Johnson testified that when he examined Dubray in October 1988, one month after Dubray stopped working at Coeur Rochester, he did not believe that Dubray had manganese poisoning. In addition, Johnson testified that exposure to manganese fumes for twelve hours cannot cause Parkinson's disease. Johnson's medical research indicated that heavy exposure to manganese fumes for two years was required to cause Parkinson's disease. Johnson further testified that even if Dubray had been exposed to Nordbak fumes for only several hours, this was an insufficient exposure to cause Parkinson's disease.

As the dissent accurately points out, there was some testimony

---

[1] During the hearing, Coeur Rochester's counsel asked the experts if twelve hours of exposure to manganese fumes could cause Parkinson's disease. Twelve hours was used as the measure because it was twice as long as Dubray's approximate actual exposure.

that Dubray was exposed to manganese fumes for more than eight hours and that this exposure could cause his illnesses. However, it is not within the province of this court to "substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." *Apececbe v. White Pine Co.*, 96 Nev. 723, 725, 615 P.2d 975, 977 (1980). Furthermore, an appeals officer's decision shall not be set aside unless it is arbitrary and capricious or clearly erroneous in view of the reliable, probative and substantial evidence of the whole record. *See* NRS 233B.135. In the present case, because the appeals officer's decision was supported by substantial evidence, we conclude that the district court's order denying Dubray's petition for judicial review must be upheld.

We have considered Dubray's remaining arguments and conclude that they are without merit.[2] Accordingly, we affirm the district court's order denying Dubray's petition for judicial review.

STEFFEN, C. J., and SHEARING, J., concur.

SPRINGER, J., with whom ROSE, J., agrees, dissenting:

When reviewing administrative decisions, a district court must "review evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and thus an abuse of the agency's discretion." *Installation & Dismantle v. SIIS*, 110 Nev. 930, 932, 879 P.2d 58, 59 (1994). A district court shall set aside an agency's decision in whole or in part if it is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." NRS 233B.135(3)(e). The SIIS decision is certainly not "clearly erroneous." Dubray began to suffer Parkinsonian symptoms while on the job, and SIIS properly concluded that the cause of Dubray's disease was on-the-job exposure to manganese. There is no reason to question the SIIS allowance of benefits to Dubray.

Dubray was frequently exposed to manganese fumes while he was working. We know that Dubray was required, as part of his job, to cut into epoxy resin material and manganese hardened steel, to weld mangjet rods,[1] and to work downwind of those

---

[2]Specifically, Dubray raises the issue for the first time on appeal that Coeur Rochester failed to supply him with appropriate safety equipment. However, this issue was not considered in the decisions of the hearing officer, the appeals officer or the district court. Accordingly, because this point was not urged at the proceedings below, this court deems the issue waived on appeal. *See* Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52, 623 P.2d 981, 983 (1981).

[1]Mangjet rods contain twenty-percent manganese.

working with manganese hardened steel, epoxy resin and mang-jet. Dubray was repeatedly exposed to manganese in the form of welding rods, which he and his co-workers used daily throughout his forty-one, twelve-hour workdays with Coeur Rochester. Also, in addition to manganese exposure from welding rods, Dubray was exposed to manganese in the cone crusher mantles that he was required to cut through as part of his welding duties.[2] The appeals officer concluded that Dubray was not exposed to epoxy-type fumes, but this is clearly not the case.

The evidence weighing in favor of granting this man his work-man's benefits is close to being overwhelming. Dr. Selina Bendix, an occupational environmental toxicologist, testified that a single exposure to the neurotoxins present in epoxy resin and black smoke produced during the liner cutting procedure would "affect the production and fate of thyroid hormone." This led Dr. Bendix to the conclusion that the exposure to epoxy resin and black smoke on the job caused Dubray's hypothryroidism and triggered the Parkinson syndrome.[3]

Denial of Dubray's benefits appears to be based on the assump-tion of the appeals officer that "a minimum of 500 hours of exposure to manganese fumes would be necessary to contract Parkinson's disease." In contradiction, Dr. Gregory Smith testi-fied that only 200 hours' exposure to manganese over six weeks would be sufficient to trigger Parkinsonian symptoms; and both Dr. Smith and Dr. Bendix testified that publications of the United States Department of Health, Education and Welfare say that forty-nine days of exposure to manganese can cause this kind of symptomology.

Virtually everything that I read in this record indicates that Dubray's illnesses were caused by repeated exposure to toxic substances while he was on the job. He had not been exposed to manganese and epoxy toxins under any other circumstances other than employment, and he presented disease symptoms during his employment and after his exposure to the toxic materials. There is every indication of work-connected causation here, and I have a very difficult time understanding the decision of either the appeals officer or the district court to deny benefits.

It looks to me as if the hearings officer was groping for some reason or excuse for denying benefits to a man who was clearly entitled to them. I am seeing more and more of these kinds of

---

[2]Crusher liners are manganese steel mantles backed by Nordbach epoxy resin. As a welder, Dubray was responsible for cutting the manganese-epoxy liners.

[3]I would note further that Dubray's exposure to toxic fumes was especially harmful because Coeur Rochester did not provide air pack respirators for its workers until after Dubray's injuries occurred.

denials coming from appeals officers' decisions. This case presents an extraordinarily exaggerated case of the unjust treatment of a worker's claim for compensation for work-connected disease. I dissent from the opinion of this court which permits this kind of thing to happen.