*256 OPINION

Per Curiam:

NRS Chapter 706 defines fully regulated common motor carriers as including persons who hold themselves out to the public as willing to be employed to transport household goods by vehicle within Nevada. Nevada law further defines the “transportation of household goods” as including the movement of such household goods by use of a rented vehicle that is driven by someone associated with an entity that has a commercial or financial interest in providing services related to the movement of those goods.
Based on these statutory definitions, we conclude that a company that is financially interested in providing extended referral services to the public to facilitate intrastate moves through individuals who are paid to load, drive, and unpack vehicles containing household goods may qualify as a fully regulated common motor carrier even though the company itself does not physically move the goods.

FACTUAL AND PROCEDURAL BACKGROUND

These appeals arise from two citations and fines levied against appellant Father & Sons & A Daughter Too (FSD2) by respondent Transportation Services Authority of Nevada (TSA) for alleged violations of NRS 706.386, which proscribes fully regulated common motor carriers from operating as carriers of intrastate commerce without first obtaining a certificate of public convenience and necessity from the TSA.

FSD2’s referral service and related documents

FSD2 is a licensed referral service that refers customers to licensed loader/packers for local household moving services. FSD2 publicly advertises its services in telephone directories. When a customer seeks a referral by calling the number listed in FSD2’s advertisement, FSD2 requires that the customer agree to rent a vehicle for use during the move from the Truck Company, which is owned by the owners of FSD2 and operates from the same address, before FSD2 will refer the customer to a loader/packer. Once the customer agrees to this arrangement, FSD2 notifies a loader/packer about the job by calling a mobile phone provided by FSD2. FSD2 then gives the loader/packer several contracts and other documents for the customer to sign. The loader/packer also receives moving supplies, such as dollies and blankets, from the Truck Company as part of the rental service paid for by the customer.
Three separate documents formalize each customer transaction with FSD2, the Truck Company, and the loader/packer: (1) a *257 loader/packer work agreement,[1] (2) FSD2’s Explanation of Service,[2] and (3) an invoice from the Truck Company.[3] All three documents are marked with the same transaction number and list FSD2 as the “Agent Company.”

Citations and fines issued to FSD2

In these appeals, FSD2 challenges citations and fines issued on two separate occasions. On the first occasion, a TSA agent observed two men carry household goods out of an apartment, load them into a van rented from the Truck Company, and drive the van to a second residence where the men unloaded the goods. After the move was complete, the TSA agent stopped the van and questioned the men.
Upon questioning, the men offered conflicting stories: one man stated that he was an independent contractor, while the other man stated that he was an FSD2 employee and that he and his partner *258 had been “assigned” to “truck #2” by FSD2’s dispatcher on the day in question. The second man questioned repeated his assertions during a later interview with TSA investigators, stating that he reported daily to FSD2’s office to pick up assignments and to receive cash payments for his work. In addition, upon request by TSA officials, that man produced a copy of each of the three documents described above — a loader/packer work agreement, FSD2’s Explanation of Service, and an invoice from the Truck Company — for the move in question. Each of these three documents were marked as transaction “No. 09666” and signed by the customer.
On the second occasion, a TSA agent observed two men load household goods from an apartment into a vehicle and drive the vehicle to a second residence, where they unloaded the goods. After the agent approached the vehicle’s driver, the driver told the agent that he worked for the Truck Company.[4] The driver further explained that FSD2 had referred him to the job but that the customer had paid him and his assistant in cash for their services, separate from any amount paid to FSD2. Upon searching the driver’s truck, the TSA agent found copies of the loader/packer work agreement, FSD2’s Explanation of Service, and the Truck Company invoice. All three documents were marked as “No. 2711” and signed by the customer.
On both occasions, the TSA agents issued citations to FSD2 and the loader/packers for violations of NRS 706.386.[5] After the TSA held hearings on the citations, it issued written findings of fact and conclusions of law, in which it determined that FSD2’s conduct in both instances constituted point-to-point transportation within the state without proper certification. The TSA based its conclusions on the interconnectedness of the three documents described above and the fact that FSD2’s Explanation of Service provided for the loader/packers to load, drive, and unload the vehicle rented from the Truck Company. According to the TSA, the loader/packers “were not ‘independent contractors’ . . . but rather acted as agents, under the direction and control of [FSD2].”
FSD2 timely filed separate petitions for judicial review with the district court. The district court denied both petitions, concluding that FSD2 had held itself out as a common motor carrier and that substantial evidence supported the TSA’s determination that it had violated NRS 706.386. These appeals followed.

DISCUSSION

On appeal, FSD2 argues that the TSA’s conclusions are not supported by substantial evidence and that certain NRS Chapter *259 706 provisions are unconstitutional. We disagree and therefore affirm the district court’s orders denying FSD2’s petitions for judicial review.

Standard of review

When a party challenges a district court’s decision to deny a petition for judicial review of an administrative agency’s determination, our function, which is identical to that of the district court, is to review the evidence presented to the agency and ascertain whether the agency abused its discretion by acting arbitrarily or capriciously.[6]
In performing our review, we are limited to the record below, and we will not substitute our judgment for that of the agency as to the weight of evidence on a question of fact.[7] We may set aside the agency’s final decision only if the decision prejudices the appellant’s substantial rights because it is, among other things, affected by error of law or clearly erroneous in view of the reliable, probative, and substantial evidence in the record.[8] Furthermore, when an agency’s conclusions of law are closely related to its view of the facts, those conclusions are entitled to deference, and we will not disturb them if they are supported by substantial evidence.[9] “Substantial evidence is evidence which a reasonable mind might accept as adequate to support a conclusion.”[10]

Nevada’s motor carrier provisions (NRS Chapter 706)

NRS Chapter 706 confers upon the TSA the power and duty “to regulate fully regulated carriers.”[11] At issue in this appeal is NRS 706.386, which provides that “[i]t is unlawful ... for any fully *260 regulated common motor carrier to operate as a carrier of intrastate commerce . . . without first obtaining a certificate of public convenience and necessity from the [TSA].”
Under NRS Chapter 706, a “fully regulated carrier” is “a common carrier . . . of . . . household goods who is required to obtain from the [TSA] a certificate of public convenience and necessity . . . and whose rates, routes and services are subject to regulation by the [TSA].”[12] A “common motor carrier” is statutorily defined as “any person or operator who holds himself out to the public as willing to transport by vehicle from place to place, . . . passengers or property, including ... a common motor carrier of property.”[13] Similarly, a “common motor carrier of property” is “any person or operator . . . who holds himself out to the public as willing to transport by motor vehicle from place to place ... the property of all who may choose to employ him.”[14] NRS 706.137 defines the “transportation of household goods” by motor vehicle as generally including any type of moving-related service, including “[a]ny movement of household goods accomplished through the use of a rented or other vehicle not owned by the shipper which is driven by someone associated with an entity that has a commercial or financial interest in providing services related to the movement of household goods which are being transported.’ ’
In light of these provisions, a “fully regulated common motor carrier” — as that phrase is used in NRS 706.386 — is in part defined as one who (1) holds himself out to the public as (2) willing to transport household goods for hire.[15] Since NRS 706.137 makes clear that the transportation of household goods includes any movement of household goods by a rental vehicle that is driven by someone “associated” with an entity that is commercially or financially interested in providing services for the move, NRS 706.386’s certification requirement essentially applies to all types of public intrastate moving services.

The TSA’s determinations that FSD2 qualified as a fully regulated common motor carrier are supported by substantial evidence

Here, FSD2 asserts that the TSA erred in concluding that the company falls within NRS 706.386’s reach because FSD2 never held itself out to the public as willing to transport property by vehicle. We disagree. In our view, the record supports the TSA’s determination that — in both cases at issue on appeal — the company’s *261 course of business illustrates its true identity as a fully regulated common motor carrier.[16]
Initially, the record reveals that FSD2 held itself out to the public as a referral service for individual movers by placing telephone directory advertisements. Thus, the remaining question is whether FSD2 can be said to have held itself out as willing to transport, and to have actually “transported,” household goods under Nevada’s motor carrier provisions. Since the Legislature has extended “the transportation of household goods” to expressly include any movement of household goods accomplished through the use of a rental vehicle driven by someone “associated” with an entity that is commercially or financially interested in servicing the move, FSD2’s conduct plainly falls within the TSA’s reach.
The record establishes that FSD2 referred its customers to individual loader/packers only after those customers rented a moving vehicle from the Truck Company, which is owned by the same persons who own FSD2. In addition, FSD2 facilitated the moves by coordinating the truck rentals, arranging for the loader/packers to arrive at the designated location on the moving date, and keeping track of all of the contracts signed by each customer with a single order number. In return, the Truck Company and the loader/packers paid FSD2’s fees. This evidence supports the TSA’s finding that FSD2 had a financial interest in providing “services related to the movement of household goods” — and that FSD2 consequently qualified as a fully regulated common motor carrier by heading a single moving scheme that involved the close working association of three purportedly separate entities (itself, the Truck Company, and individual movers). FSD2’s scheme was designed to accomplish conduct plainly regulated by the TSA: intrastate operations carried out by public moving services. Accordingly, the TSA’s decisions to cite and fine FSD2 for operating a moving service without first obtaining a certificate of public convenience and necessity, as required by NRS 706.386, were proper.[17]

*262
Constitutional concerns

FSD2 also contends that NRS Chapter 706 violates the U.S. and Nevada Constitutions in three ways. First, FSD2 argues that NRS 706.137’s “association” language is unconstitutionally vague. Second, FSD2 asserts that NRS 706.386’s certification requirement violates its First Amendment right to free association. Third, FSD2 asserts that NRS 706.386 violates the contracts clause of the state constitution. The constitutionality of these statutes is a question of law, which we review de novo.[18]
With respect to FSD2’s first constitutional argument, we note that “[t]he vagueness doctrine is based upon the principle that ‘a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.’ ”[19] Here, FSD2 complains that the term “associated,” as used within NRS 706.137, is unduly vague. However, NRS 706.137 neither forbids nor requires any action, and the TSA is not authorized to regulate anyone who merely engages in the “transportation of household goods.” Instead, the “transportation of household goods” pertains to only part of the description of persons whom the TSA may regulate under NRS 706.386. Indeed, before persons may be considered fully regulated common motor carriers, they must also hold themselves out to the public for employment. As a result, we reject FSD2’s argument that NRS 706.137 is unconstitutionally vague.
With respect to FSD2’s second constitutional argument, we have previously recognized that the State may infringe upon the right to freely associate with others by adopting regulations that “ ‘serve compelling state interests, unrelated to the suppression of ideas, that cannot be achieved through means significantly less restrictive of associational freedoms.’ ”[20] In this case, NRS 706.386 is narrowly tailored to protect the public from unlicensed, uninsured, and unregistered common motor carriers by permitting the TSA to cite persons who act as common motor carriers of property without first obtaining proper certification. Thus, in our view, NRS 706.386 satisfies the relevant standard, and FSD2’s First Amendment argument fails.
*263 With respect to FSD2’s third and final constitutional argument, we conclude that the contracts clause does not apply for at least one reason: the contracts clause does not protect prospective contracts, and none of the contracts in this case existed prior to the enactment of the relevant statutory provisions.[21]

CONCLUSION

Because we conclude that substantial evidence supports the TSA’s determinations that FSD2 twice violated NRS 706.386 and that FSD2’s constitutional arguments lack merit, we affirm the district court’s orders denying FSD2’s petitions for judicial review.

 Under the work agreement, the loader/packer agrees to load the customer’s personal property into a vehicle rented by the customer and to unload the property at a destination designated by the customer. In addition, the loader/packer agrees to deliver a rented vehicle and return it to its rental location upon request. The loader/packer also agrees to drive the vehicle to the customer’s designated location upon request. The work agreement states that the loader/packer is an independent contractor with regard to all aspects of the move (and not an agent of the rental company).

 The Explanation of Service contains several important paragraphs defining FSD2’s role in the transaction:
We [FSD2] provide referral and consulting service for both a licensed, independent packing and loading service (the movers) and a truck/equipment company (the truck) who pay our fees. The referral/consulting service is NOT a moving company. We maintain a list of separately licensed independent contractors who provide a packing and loading service. With your agreement, the packing and loading service will load, drive, and unload the truck from the Truck Company, Inc. The LAW requires two separate contracts. One is for the independent packing and loading service, and the other is for the truck/equipment company. PLEASE READ THESE CONTRACTS BEFORE SIGNING THEM!
It is important that you understand that the packing and loading service is exclusively responsible for handling your belongings. . . . Packer loaders are NOT employees of the referral company or the Truck Company, Inc.
The truck/equipment company agreement assigns you rights and responsibilities for the truck. It is much like any other vehicle rental agreement in a commercial marketplace. The driver of any rental vehicle must be properly licensed. The referral company maintains a list of packer loader licensed drivers along with their Department of Motor Vehicles driving record. The referral company will not refer a driver who is not licensed with a good driving record.

 The invoice shows the amount owed to the Truck Company for use of the truck.

 The driver later claimed to be an independent contractor.

 The loader/packer citations are not at issue in these appeals.

 Gandy v. State ex rel. Div. Investigation, 96 Nev. 281, 282, 607 P.2d 581, 582 (1980).

 Schepcoff v. SIIS, 109 Nev. 322, 325, 849 P.2d 271, 273 (1993); see NRS 233B. 135(3)(d)-(e).

 NRS 233B.135(3)(d)-(e).

 SIIS v. Khweiss, 108 Nev. 123, 126, 825 P.2d 218, 220 (1992).

 Schepcoff, 109 Nev. at 325, 849 P.2d at 273.

 NRS 706.151(1)(a). Specifically, NRS Chapter 706 charges the TSA with the responsibility “[t]o provide for fair and impartial regulation, to promote safe, adequate, economical and efficient service and to foster sound economic conditions in motor transportation.” NRS 706.151(l)(c). Moreover, the TSA must “encourage the establishment and maintenance of reasonable charges for . . . [i]ntrastate transportation by fully regulated carriers” while discouraging “any practices which would tend to increase or create competition that may be detrimental to the traveling and shipping public or the motor carrier business within this State.” NRS 706.151(l)(d)-(e).

 NRS 706.072.

 NRS 706.036 (emphases added).

 NRS 706.046 (emphases added).

 See also Ruggles v. Public Service Comm’n, 109 Nev. 36, 846 P.2d 299 (1993).

 See Cook Tractor Co. v. Director of Revenue, 187 S.W.3d 870, 874 (Mo. 2006) (noting that “[h]olding out can he accomplished by advertising or soliciting by agents, or may result from a course of business or conduct, but essentially must be a public offering of the service that communicates that it is available to those who wish to use it”).

 Although FSD2 attempts to escape liability by pointing to its written explanation of service, which emphasizes that FSD2 is “NOT a moving company,” and its telephone directory advertisement, which contains the statement “Not an Intrastate Carrier,” the company’s actual conduct demonstrates otherwise. See Cook Tractor Co., 187 S.W.3d at 874.
Separately, FSD2 complains that the TSA targeted the company for improper reasons and unlawfully failed to reveal the identities of informants that reported FSD2’s conduct to the TSA. However, nothing in the record suggests that the TSA acted improperly, and in any case, the informants’ identities are irrelevant to the issue of whether violations of NRS 706.386 occurred.

 Silvar v. Dist. Ct., 122 Nev. 289, 292, 129 P.3d 682, 684 (2006).

 Matter of T.R., 119 Nev. 646, 652, 80 P.3d 1276, 1280 (2003) (quoting Connally v. General Const. Co., 269 U.S. 385, 391 (1926)).

 Burgess v. Storey County, 116 Nev. 121, 125, 992 P.2d 856, 859 (2000) (quoting Roberts v. United States Jaycees, 468 U.S. 609, 623 (1984)).

 State of Nevada v. Glusman, 98 Nev. 412, 426, 651 P.2d 639, 648 (1982) (recognizing that the contracts clause protects constitutionally vested rights unless police power concerns of the state render interference reasonably necessary).