# IN THE SUPREME COURT OF THE STATE OF NEVADA

JPMORGAN CHASE BANK, N.A.,
Appellant,
vs.
1209 VILLAGE WALK TRUST, LLC,
Respondent.

No. 69784 **FILED**

MAR 20 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY____S. Young____
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

Appeal from a district court grant of summary judgment in a quiet title action. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

This case was partially litigated on the basis of several issues that a trio of recent cases have resolved. *Saticoy Bay LLC v. Wells Fargo Home Mortgage* held that NRS Chapter 116's HOA's nonjudicial foreclosure scheme does not violate due process, which defeats JPMorgan's facial challenge to NRS 116.31168. 133 Nev., Adv. Op. 5, 388 P.3d 970, 975 (2017). *Renfroe v. Lakeview Loan Servicing, LLC* held that NRS 116.3116 does not violate the Supremacy Clause when applied to a property insured with a mortgage through the Federal Housing Administration, resolving JPMorgan's claim for the same. 133 Nev., Adv. Op. 50, 398 P.3d 904, 908 (2017). And, *Nationstar Mortgage, LLC v. Saticoy Bay LLC* held that NRS 116.1113's obligation of good faith in HOA foreclosure sales does not invoke the requirement of commercial reasonableness as used in Uniform Commercial Code Article 9, *see Levers v. Rio King Land & Inv. Co.*, 93 Nev. 95, 98, 560 P.2d 917, 920 (1977), deciding JPMorgan's same argument here.

18-10728

133 Nev., Adv. Op 91, 405 P.3d 641, 646 (2017). We therefore affirm the district court's grant of summary judgment on these issues, and address JPMorgan's remaining claims. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005) (the grant of denial of summary judgment is reviewed de novo).

*NRS Chapter 117 does not govern the property's foreclosure sale*

JPMorgan raises a threshold issue, that because the property was a condominium built before 1992, NRS Chapter 117 should have governed the foreclosure sale instead of NRS Chapter 116. NRS Chapter 117 applies to condominiums that recorded a survey map, diagrammatic floor plans, and a signed certificate before January 1, 1992. NRS 117.020(1). The chapter provides guidance on condominium communities' declarations of restrictions, community assessments, transferring property interests, and the proceedings to foreclose on a community assessment lien. Specifically, Chapter 117 does not provide HOAs a superpriority lien, stating that a community's CC&Rs "may provide for the subordination thereof to any other liens and encumbrances." NRS 117.070(2). Here, the property's CC&Rs specifically provide that assessment liens "shall be subordinate to the lien of any first Mortgage upon any condominium."

But in 1991, almost 30 years after enacting NRS Chapter 117, the Legislature adopted the UCIOA as NRS Chapter 116, 1991 Nev. Stats., ch. 245, at 535, governing common ownership of real estate, including condominiums. *See* UCIOA introduction, 7 pt. 2 U.L.A. 1-4 (2009). NRS 116.1201(4), detailing NRS Chapter 116's applicability, originally stated, "[t]he provisions of chapters 117 and 278A of NRS do not apply to common-interest communities created *on or after January 1, 1992*." *See* 1999 Nev. Stat., ch. 572, § 16, at 2999 (emphasis added). The Legislature later amended this subsection to be more absolute, removing the January

 

1992 limitation entirely. *See id.* ("[T]he provisions of chapters 117 and 278A of NRS do not apply to common-interest communities.").

When it amended NRS 116.1201(4) in 1999, the Legislature also amended NRS 116.1206, revising all existing common interest communities' governing documents, such as CC&Rs or bylaws, to comply with NRS Chapter 116. *See* 1999 Nev. Stats., ch. 572, § 16.5, at 2999 ("Any declaration, bylaw or other governing document of a common-interest community created before January 1, 1992, that does not conform to the provisions of this chapter shall be deemed to conform with those provisions . . ."). NRS 116.1206(2)(b) specifically addressed amendments in declarations or bylaws of communities built prior to 1992 and, as relevant here, states, "[i]f the result accomplished by the amendment is permitted by [NRS Chapter 116], and was not permitted by law before January 1, 1992, the amendment may be made under this chapter."[1]

---

[1]The 1999 amendments to NRS Chapter 116 also clarified when they would become effective, stating that

> [a]ny declaration, bylaw or other governing document of a common-interest community in effect on October 1, 1999, that does not conform to the provisions of chapter 116 of NRS, as amended by this act, shall be deemed to have been conformed to those provisions by operation of law. Notwithstanding any other provision of law to the contrary, not later than October 1, 2000, any declaration, bylaw or other governing document of a common-interest community created on or after January 1, 1992, that does not conform to the provisions of chapter 116 of NRS, as amended by this act, must be changed to conform to those provisions, and may be so changed without complying with the procedural requirements

While retroactive application of statutes is generally disfavored, the 1999 amendments to NRS Chapter 116 amended the property's CC&Rs such that NRS Chapter 116 governed the property's foreclosure. *See* Shambie Singer, *2 Sutherland Statutory Construction* § 41:2 (7th ed. 2009) ("A fundamental principle of jurisprudence holds that retroactive application of new laws is usually unfair."). The property's CC&Rs specifically provided for subsequent legislative amendments, stating that an assessment lien "may be foreclosed as and in the same manner as the foreclosure of a mortgage upon real property under the laws of the State of Nevada, or may be enforced by sale pursuant to [NRS 117.075], as from time to time amended, or any successor statute." Thus, after the 1999 NRS Chapter 116 amendments, the property's CC&Rs were deemed to conform to NRS Chapter 116, including the imposition of superpriority liens.

Further, both the mortgage and lien at issue arose long after the 1999 amendments, giving both parties ample time to take notice of NRS Chapter 116's amendments to NRS Chapter 117 and the property's CC&Rs. JPMorgan, through its predecessor MetLife, established its first deed of trust on the property in 2008 and the HOA established its lien on the property in 2010. This length of time between the amendments and the mortgage and lien at issue also precludes a Contract Clause violation. Because neither party contracted under the pre-1999 version of NRS 116 or the property's CC&Rs, the change in law did not impair an existing

---

generally applicable to the adoption of an amendment to such a declaration, bylaw or other governing document.

1999 Nev. Stats., ch. 572, § 37, at 3019.

contractual relationship. *See Father & Sons & A Daughter Too v. Transp. Servs. Auth. of Nev.*, 124 Nev. 254, 263, 182 P.3d 100, 106 (2008) ("[T]he contracts clause does not protect prospective contracts, and none of the contracts in this case existed prior to the enactment of the relevant statutory provisions."). Accordingly, we affirm the district court's finding that NRS Chapter 117 did not apply to the property's foreclosure.

*Genuine issues of material fact regarding the foreclosure sale under Nationstar require reversal and remand*

*Nationstar* clarified that although low price alone is not enough to set aside a foreclosure sale, an inadequate price may invalidate a foreclosure sale when coupled with irregularities in the sale process, amounting to fraud, unfairness, or oppression. 133 Nev., Adv. Op. 91, 405 P.3d at 648. JPMorgan argues that the HOA did not credit bid the property at the foreclosure sale, and that because the Property was allegedly sold to the HOA for less than 11 percent of its fair market value, the sale should be set aside.

The record does not definitively establish the amount of the HOA's credit bid at the sale, whether it was for the superpriority portion of the lien or the entire amount. At the time the foreclosure sale occurred, the HOA trustee was not required to specify the super and subpriority portions of the lien in its notice of sale. *See SFR Invest. Pool 1, LLC v. U.S. Bank, N.A.*, 130 Nev. 742, 757, 334 P.3d 408, 418 (2014); *but see* NRS 116.31162(1)(b)(2) (2017). The record suggests that the HOA may have credit bid the full amount of its lien, then written off the subpriority piece when, months after the foreclosure sale, it recorded the trustee's deed and transferred the property to a third party for the superpriority portion of the lien. The record shows that approximately 13 bidders attended the series of foreclosure sales that included the property, and that other properties

 

were sold to one or more of these bidders. The credit bid on the property at issue in this appeal may be important to the *Nationstar* analysis because, if the HOA trustee set the sale price for the entire lien amount rather than the superpriority portion, it may have chilled bidding on the property. *See* Grant S. Nelson et al., *Real Estate Finance Law* § 7:22 (6th ed. 2014) (chilled bidding may occur when the property's advertised price overstates the amount of outstanding debt because it gives the appearance that a higher bid would be required to outbid the foreclosing party than is actually necessary); *see also Palacios v. Fla. Funding Tr.*, 32 So. 3d 167, 169 (Fla. Dist. Ct. App. 2010) ("To conduct a fair foreclosure sale, the correct amount needed to pay off the foreclosing first mortgagee must be known to all potential bidders, be they outsiders . . . or junior lien holders . . . This is so each bidder can assess the situation corresponding to that bidder's individual circumstance and decide what the bidder is willing to pay to protect that bidder's interest.").

The HOA may have owed JPMorgan any amount beyond the superpriority portion of the assessment lien, as JPMorgan's interest as the holder of the first deed of trust was superior to the subpriority portion of the assessment lien. *See* NRS 116.31164(7)(b)(4) (requiring the trustee conducting a foreclosure sale to apply proceeds in the order of priority of any subordinate claim to the superpriority lien); *see also* Restatement (Third) of Property: Mortgages § 7.4 (1997) ("When the foreclosure sale price exceeds the amount of the mortgage obligation, the surplus is applied to liens and other interests terminated by the foreclosure in order of their priority . . . ."); *but see Fidelity Bank v. King*, 136 P.3d 465, 469 (Kan. 2006) (junior mortgagee who fails to appear and assert its position in a senior mortgagee's

SUPREME COURT
OF
NEVADA

(O) 1947A

foreclosure action waives any payment priority it might otherwise have had to surplus proceeds from a sheriff's sale).

And, the record suggests other potential irregularities: The address to which the HOA trustee sent JPMorgan's predecessor MetLife the notice of sale appears incorrect and the record does not contain certified mail receipts for the notice of sale. *See* NRS 116.311635(4) (requiring a certificate of mailing or a signed affidavit as proof that the notice of sale was served on the necessary parties). Taken together, this could have resulted in a potential lack of notice. 2 Baxter Dunaway, *Law of Distressed Real Estate*, § 17:20 (2017) ("A foreclosure sale can be set aside by a court of equity by showing a . . . failure to give required notices . . . ."). Finally, the record does not adequately explain why the HOA released its lien and notice of default on a property in the same development as the property at issue here, after making the same type of credit bid on the property at the foreclosure sale, and similarly delayed recording the property's deed. *See* NRS 107.080(10)(a) (requiring recordation of a trustee's deed upon sale within 30 days after a sale).

Given all this, it appears that genuine questions of material fact may exist under *Nationstar* with respect to the validity of the sale. *See* Restatement (Third) of Property (Mortgages) § 8.3 cmt. c (1997) ("[E]ven a slight irregularity in the foreclosure process coupled with a sale price that is substantially below fair market value may justify or even compel the invalidation of the sale."). These questions should be considered after further briefing and analysis by the district court in light of *Nationstar*. As for JPMorgan's remaining arguments, we have considered them, and they do not provide a basis for relief.

Accordingly, we ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C. J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:   Hon. Nancy L. Allf, District Judge
      Thomas J. Tanksley, Settlement Judge
      Smith Larsen & Wixom
      McCarthy & Holthus, LLP/Las Vegas
      Alessi & Koenig, LLC
      Eighth District Court Clerk