THE STATE OF NEVADA, ex rel. DEPARTMENT OF PRISONS, Appellant, v. PAUL G. JACKSON; THE STATE OF NEVADA, DEPARTMENT OF PERSONNEL, Respondents.

No. 25529

May 25, 1995                                895 P.2d 1296

*Frankie Sue Del Papa,* Attorney General, and *George Taylor,* Deputy Attorney General, Carson City, for Appellant.

*Norah Ann McCoy,* Carson City, for Respondents.

# OPINION

*Per Curiam:*

## FACTS

Respondent Paul G. Jackson was first employed by the Department of Prisons (DOP) in March of 1983 at the Southern Desert Correctional Center (SDCC). Over four years, he was promoted through several positions, finally reaching a mid-level management position of correctional lieutenant. He generally received standard or above standard evaluations.

However, in August of 1991, he was served with a specificity of charges, charging him with misconduct on and off the job in violation of various provisions of the Nevada Administrative Code and various DOP regulations. These charges resulted in his termination. Two incidents were included in the specificity of charges; however, only the second incident is at issue in this appeal. This incident involved a "tour" that Jackson gave after hours on April 27, 1991, to a woman and her minor son, who were accompanied by an inmate.

Jackson was charged with improperly escorting the woman to the control center, perimeter towers, and to the administration tower. Jackson claimed he gave the "tour" to the woman and her son as part of SDCC's Prison 101 Awareness Program, because the minor was a first time juvenile offender for grand theft. Jackson was partially responsible for the creation of the Prison 101 Awareness Program, which targeted youth at risk of continued criminal activity.

The four went to the education building, an inmate residential unit, the mental health lockdown, the culinary, the infirmary, and the visiting room. Later, Jackson allowed the woman's son to stay alone with the inmate at the visitors' room patio to provide a "one on one" question and answer session between the two while Jackson and the woman visited the administration tower.

Jackson took the woman to the control center and to the administration tower to obtain a bird's eye view of the institution. Access to the control center is severely restricted because sensitive prison equipment, such as keys, radios, and weapons, is kept there. The DOP administrative regulation detailing accessibility to the control center states the following: "The control center security doors shall remain locked for security. No unauthorized personnel will be admitted inside the control center. Unless assigned relief duty, off duty officers or officers assigned to other posts are considered unauthorized personnel." However, Jackson felt that the woman posed no security risk to the prison. According to the warden, the administration tower and the control center

make up a central part of the security of the prison. Even if a visitor was not a threat, admission to the towers was strictly forbidden.

The hearing officer evaluated several instances of comparable breaches of security and unauthorized or improper visits. The hearing officer concluded that compared to the discipline meted out in other incidents, Jackson's termination was out of proportion to the facts. He pointed out that the warden himself, although not the appointing authority, felt that the DOP had not followed the principle of progressive discipline in Jackson's case. The hearing officer reversed and remanded Jackson's termination and awarded him back pay and benefits for the period of his termination.

The DOP filed a petition for judicial review. The district court denied the DOP's petition for judicial review. The court felt that the hearing officer's decision was supported by substantial evidence and that the hearing officer properly executed his role of reviewing the evidence. The DOP appealed the denial of its petition for judicial review to this court.

## DISCUSSION

In reviewing the decisions of administrative agencies, NRS 233B.135 prohibits courts from substituting their judgment for that of the agency as to the weight of the evidence on a question of fact, unless the final decision of the agency is, among other things, clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, is arbitrary or capricious, or is characterized by abuse of discretion. However, this case raises a question of whether the hearing officer gave due deference to the DOP in issues concerning the security at a prison. We conclude that the hearing officer did not.

In denying the DOP's petition for judicial review, the district court considered whether the appointing authority or the hearing officer should be given deference. The district court decided that deference should be given to the hearing officer's decision if it was supported by substantial evidence. The premise behind this, the district court reasoned, is that employees need to be able to have an independent evaluation of the agency's decision to terminate them. Although this policy is valid in most cases, this case presents the additional issue of security at one of our correctional facilities.

In Dredge v. State ex rel. Dep't Prisons, 105 Nev. 39, 769 P.2d 56 (1989), this court held that the need to maintain proper security within the prison system entitled the appointing author-

ity's decision to deference by the hearing officer whenever security concerns are implicated in an employee's termination. *Id.* at 42-43, 769 P.2d at 58 (citing NAC 284.650(3)). NAC 284.650(3) provides that appropriate disciplinary or corrective action may be taken if an "employee of any institution administering a security program . . . violates or endangers the security of the institution."

Generally, we would defer to the hearing officer, were it not for *Dredge,* which requires deference to the appointing authority in cases of breaches of security. This case clearly falls within the ambit of a security breach. Security in correctional facilities is a vital necessity, and in this case, it is clear that Jackson violated the security interests of the facility by taking his visitor to the administration tower and control center. By doing so, Jackson's actions constituted such a serious breach of security as to warrant termination. In this case, the hearing officer did not give due deference to DOP in evaluating disciplinary action that constitutes a serious breach of security.

Although the issue of security concerns requires deference to the appointing authority, we will not consider this exception unless the facts indicate a clear and serious security threat. Therefore, this exception will be applied only in cases of egregious security breaches and will not be allowed to undermine the job security of otherwise permanent employees, who deserve to have a fair and independent evaluation of the agency head's termination decision. In this case, the DOP had a written administrative regulation addressing authorized accessibility to the control center. This regulation specifically addressed the need and reasons for strict security in the control center, and its effective date was approximately eight years prior to the incident resulting in Jackson's termination.

Accordingly, we reverse the decision of the district court and remand for findings consistent with this opinion.