134 Nev., Advance Opinion 92

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CARA O'KEEFE, AN INDIVIDUAL,
Appellant,
vs.
THE STATE OF NEVADA
DEPARTMENT OF MOTOR VEHICLES,
Respondent.

No. 68460



FILED

DEC 06 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a district court order granting a petition for judicial review in an employment matter. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Affirmed.*

Hejmanowski & McCrea LLC and Malani L. Kotchka, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Jordan T. Smith, Assistant Solicitor General, Cameron P. Vandenberg, Chief Deputy Attorney General, and Dominika J. Batten and Brandon R. Price, Deputy Attorneys General, Carson City,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

This case concerns a decision by the Department of Motor Vehicles to terminate a classified employee's employment and a hearing officer's decision to reinstate the employee. At issue is whether the hearing

officer applied the correct standard of review. To resolve that issue, we must interpret NRS 284.385(1)(a), which sets forth grounds for an agency to dismiss or demote a classified employee, together with NRS 284.390, which directs a hearing officer to review the agency's disciplinary decision. We hold: Whether the employee violated a law or regulation is reviewed de novo, but the agency's decision to terminate the employee is entitled to deference. Because the hearing officer applied the wrong standard of review, we affirm the district court's order granting the petition for review.

## FACTS AND PROCEDURAL HISTORY

*The employee's policy violations and termination*

From 2006 until 2012, appellant Cara O'Keefe worked as a revenue officer at the Department of Motor Vehicles (DMV), where her job involved the licensing and registration of trucks. Her performance evaluations were positive, and she had never received discipline for violating any DMV rules or regulations. In December 2012, O'Keefe transferred to a different state position within the Nevada Division of Insurance (DOI). That transfer was considered a promotion, and so, under NRS 284.300, O'Keefe had the option to return to her position at the DMV if she failed her probationary period at the DOI.

Shortly after O'Keefe's transfer, two of her former DMV colleagues notified the DMV administrator for management services that they had overheard O'Keefe making unauthorized calls to the Carson City Sheriff's Office. On those calls, O'Keefe stated that she was helping a customer with a driver's license issue related to a DUI, but in reality, O'Keefe had no customer at her desk, and her job duties never involved DUI issues. Because O'Keefe had already left her position at the DMV, the DMV administrator declined to investigate the allegations.

O'Keefe failed her probationary period at the DOI and opted to return to the DMV. In light of O'Keefe's imminent return, the DMV administrator opened a formal investigation into O'Keefe's prior conduct while employed by the DMV. That investigation revealed that, in addition to the two unauthorized calls she made to the sheriff's office, O'Keefe accessed confidential DMV databases on at least ten occasions for nonwork purposes. O'Keefe admitted to all of the allegations, explaining that she accessed the information to help a friend "fill out some paperwork" related to the friend's DUI violation. O'Keefe further admitted that she had read and signed a memorandum from the DMV director warning employees that "querying DMV records for a purpose other than DMV business is strictly forbidden." That memorandum contained only one sentence that was underlined: "The first offense can result in termination."

In a predisciplinary hearing memorandum, the DMV administrator noted that "misuse of information technology is a terminable offense for a first time violation" and recommended that the DMV terminate O'Keefe's employment. The DMV director agreed, concluding that "it is in the best interest of the State of Nevada to terminate [O'Keefe's] employment."

*The hearing officer's decision*

O'Keefe requested a hearing under NRS 284.390 to challenge the DMV's decision to terminate her employment. After considering the evidence, the hearing officer vacated the DMV's decision, noting the hearing officer's duty "to ascertain if there is substantial evidence of legal cause, and to ensure that the employer did not act arbitrarily or capriciously, thus abusing its discretion." The decision cited NRS 284.385, *Dredge v. State, Department of Prisons*, 105 Nev. 39, 769 P.2d 56 (1989), and *Knapp v. State,*

SUPREME COURT
OF
NEVADA

(O) 1947A

3

*Department of Prisons*, 111 Nev. 420, 892 P.2d 575 (1995), for the proposition that the hearing officer must "make an independent determination as to whether there is sufficient evidence showing that the discipline would serve the good of the public service."

The hearing officer found that O'Keefe violated three Nevada Administrative Code (NAC) regulations[1] and four provisions of the DMV Prohibitions and Penalties.[2] With regard to the most serious offense—DMV Prohibition G(1), "Misuse of Information Technology"—the hearing officer found that while a first-time violation "can result in termination," "the level of discipline for this offense is discretionary." The hearing officer found that O'Keefe's conduct "was not a 'serious violation of law or regulation' to merit termination prior to imposition of less severe disciplinary measures" (citing NRS 284.383(1)), and the evidence "does not establish that termination will serve the good of the public service." The hearing officer based these determinations on (1) "the nature of the offense," which the hearing officer did not consider grave; (2) O'Keefe's "seven years of state service without prior discipline"; and (3) "the DMV's failure to promptly investigate this matter and take immediate corrective action." Thus, the hearing officer

---

[1]NAC 284.650(1) ("Activity which is incompatible with an employee's conditions of employment"); NAC 284.650(6) ("Insubordination or willful disobedience"); NAC 284.650(18) ("Misrepresentation of official capacity or authority").

[2]The four DMV Prohibitions and Penalties provisions were: B(23) ("Disregard and/or Deliberate Failure to Comply with or Enforce . . . Regulations and Policies"), C(4) ("Conducting Personal Business During Work Hours"), G(1) ("Misuse of Information Technology"), and H(7) ("Acting in an Official Capacity Without Authorization").

reversed the DMV's decision to terminate O'Keefe and recommended the lesser discipline of a 30-day suspension.

*Judicial review*

The DMV petitioned for judicial review. The district court noted the hearing officer's finding that O'Keefe had violated DMV Prohibition G(1), which, according to the DMV's regulations, warranted termination even if it was the employee's first offense. The district court reasoned that "[a] hearing officer does not have authority to second-guess the DMV's Prohibitions and Penalties offense classification," so if the DMV "proves an offense for which the Prohibitions and Penalties provide a minimum discipline of termination, just cause for termination is established and termination is reasonable as a matter of law." On those grounds, the district court granted the petition and set aside the hearing officer's decision.

O'Keefe appealed. The court of appeals affirmed by order, holding that the "DMV's Prohibitions and Penalties mandated dismissal for O'Keefe's actions," so the "hearing officer's ruling to the contrary was arbitrary and based on an error of law." *O'Keefe v. State, Dep't of Motor Vehicles*, Docket No. 68460-COA (Order of Affirmance, January 30, 2017). O'Keefe petitioned for review under NRAP 40B, which we granted.

## DISCUSSION

"When a [hearing officer's] decision . . . is challenged, the function of this court is identical to that of the district court. It is to review the evidence presented to the [hearing officer] and ascertain whether [the hearing officer] acted arbitrarily or capriciously, thus abusing [his or her] discretion." *Gandy v. State, Div. of Investigation*, 96 Nev. 281, 282, 607 P.2d 581, 582 (1980) (discussing review of an administrative body's decision); *see*

*also Knapp*, 111 Nev. at 423, 892 P.2d at 577 (indicating that a hearing officer's decision is treated the same as an "agency determination"). Under the arbitrary-and-capricious standard, this court defers to the hearing officer's "conclusions of law [that] are closely related to [the hearing officer]'s view of the facts" but decides "pure legal questions" de novo. *Knapp*, 111 Nev. at 423, 892 P.2d at 577 (internal quotation marks omitted).

*Statutory background*

Nevada's state personnel system is highly regulated. *See generally* NRS Chapter 284; NAC Chapter 284. The Personnel Commission must adopt an employee discipline system wherein, "except in cases of serious violations of law or regulations, less severe measures are applied" before more severe disciplinary actions such as termination. NRS 284.383(1). Permanent classified state employees receive the additional protection that the appointing authority[3] must "consider[ ] that the good of the public service will be served" by terminating the employee. NRS 284.385(1)(a).[4] Classified employees also have the right to challenge their

---

[3]"Appointing authority" means any official granted the "legal authority to make appointments to positions in the state service." NAC 284.022. The relevant appointing authority in this case is the DMV or, more specifically, the DMV director, who made the final determination to terminate O'Keefe.

[4]NRS 284.385 has been amended twice, in 2015 and 2017, since the foregoing events took place, but the language of subsection 1 remains the same as the version in effect when the hearing officer issued the decision at issue here. *Compare* 2011 Nev. Stat., ch. 272, § 2, at 1495, *with* NRS 284.385.

termination before a "hearing officer of the [Personnel] Commission." NRS 284.390(1).[5]

In this case, the parties agree that O'Keefe was a classified employee who violated multiple NAC 284.650 regulations and four DMV Prohibitions and Penalties, including DMV Prohibition G(1). The issue we address is whether the hearing officer acted arbitrarily and capriciously in overruling the DMV's conclusions that (1) O'Keefe's conduct constituted a "serious violation[ ] of law or regulation[ ]," NRS 284.383(1), and (2) terminating O'Keefe's employment would serve "the good of the public service," NRS 284.385(1)(a).

*The hearing officer acted arbitrarily and capriciously in holding that O'Keefe's conduct did not constitute a serious violation of law or regulation*

The hearing officer held that O'Keefe's conduct was not a "serious violation of law or regulation" so as to warrant immediate termination without imposing progressive discipline as required by NRS 284.383(1). That conclusion of law was erroneous. The DMV expressly delineated Prohibition G(1) as an offense that warrants termination for a first violation. By doing so, the agency expressed its view that the offense involves a "serious violation[ ]" for purposes of NRS 284.383(1). *See also* NAC 284.646(1) (authorizing dismissal if "[t]he agency with which the employee is employed has adopted any rules or policies which authorize the dismissal of an employee for such a cause"). As the district court aptly

---

[5]NRS 284.390 was amended in 2017. *See* 2017 Nev. Stat., ch. 581, § 3, at 4181-82. For the purposes of this appeal, the amendment was merely cosmetic, as the relevant statutory language remained the same. *See* 2011 Nev. Stat., ch. 479, § 64, at 2954.

noted, the hearing officer basically "second-guess[ed]" the DMV's assessment as to the seriousness of the violation of its own regulations, thus defeating the purpose of requiring the Personnel Commission to approve agencies' regulations in the first place.[6] Therefore, in holding that O'Keefe's conduct was not a "serious violation of law or regulation," the hearing officer disregarded the DMV's Prohibitions and Penalties and, in so doing, acted arbitrarily and capriciously.

*The hearing officer applied an erroneous legal standard when it determined that O'Keefe's termination was not for the good of the public service*

Upon concluding that an employee committed a "serious violation[ ] of law or regulation," NRS 284.383(1), a hearing officer must still decide whether the employee's termination was "without just cause as provided in NRS 284.385," NRS 284.390(7).[7] NRS 284.385(1)(a) provides that an appointing authority may "[d]ismiss or demote any permanent classified employee when the appointing authority considers that the good of the public service will be served thereby." The issue is whether the hearing officer determines "the good of the public service" de novo or instead defers to the agency's determination.

The hearing officer stated that her duty was to "make an independent determination as to whether there is sufficient evidence showing that the discipline would serve the good of the public service." That

---

[6]The DMV Prohibitions and Penalties were previously approved by the Personnel Commission—the same commission that grants the hearing officer the authority to review agency disciplinary decisions. NRS 284.383.

[7]At the time of the hearing officer's decision, this language was codified at subsection 6 of NRS 284.390. Although it was later moved to subsection 7, the language has remained unchanged. *See* 2017 Nev. Stat., ch. 581, § 3, at 4181-82.

statement is ambiguous as to what standard the hearing officer applied: "[M]ake an independent determination" implies de novo review, but "whether there is sufficient evidence" suggests a deferential standard. However, the hearing officer's analysis of what she considered to be the "good of the public service" reveals that she in fact reviewed that issue de novo.

O'Keefe argues that the hearing officer correctly applied de novo review to determine whether "the good of the public service will be served" by terminating her employment. She relies on NAC 284.798, which provides that "[t]he hearing officer shall make no assumptions of innocence or guilt but shall be guided in his or her decision by the weight of the evidence as it appears to him or her at the hearing," and further cites *Knapp*, wherein this court stated, "Generally, a hearing officer does not defer to the appointing authority's decision." 111 Nev. at 424, 892 P.2d at 577 (noting "[a] hearing officer's task is to determine whether there is evidence showing that a dismissal would serve the good of the public service").

There are several problems with the de novo standard that O'Keefe advocates. First, it ignores the deferential language used in the relevant statutes. For example, NRS 284.390(1) directs the hearing officer to determine the "reasonableness" of the agency's disciplinary decision, and NRS 284.390(7) provides that the hearing officer reviews decisions to terminate for "just cause." Terms such as "reasonableness" and "just cause" indicate a high level of deference. *See, e.g., Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev. 245, 249, 327 P.3d 487, 490 (2014) (equating "reasonableness" review to the "substantial evidence standard of review"); *Sw. Gas Corp. v. Vargas*, 111 Nev. 1064, 1078, 901 P.2d 693, 701-02 (1995)

("[A] discharge for 'just' or 'good' cause is one which is not for any arbitrary, capricious, or illegal reason and which is one based on facts (1) supported by substantial evidence, and (2) reasonably believed by the employer to be true."). Second, a de novo standard does not account for the nature of the "good of the public service" inquiry or the perspective from which that inquiry is conducted. In particular, NRS 284.385(1)(a) authorizes dismissal so long as "the appointing authority considers that the good of the public service will be served thereby." That language is meaningfully different from authorizing dismissal when the public service will *in fact* be served thereby. That is, the statute implicitly recognizes that "the good of the public service" is a subjective concept, and the relevant perspective is that of the appointing authority, who is in a better position than the hearing officer to evaluate what is best for the "public service." *See Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. 928, 931-32, 314 P.3d 949, 951 (2013) ("These provisions grant the hearing officer the power to review for reasonableness, . . . they do not make hearing officers appointing authorities or provide them with explicit power to prescribe the amount of discipline imposed.").

Like the provisions in NRS Chapter 284, the administrative code does not authorize de novo review of whether "the good of the public service will be served" by terminating a classified employee. In directing the hearing officer to "make no assumptions of innocence or guilt," NAC 284.798 indicates that the hearing officer reviews de novo whether the employee *in fact* committed the charged violation. It says nothing about the hearing officer's review of the reasonableness of or just cause for dismissing the employee based on the violation. In sum, the statutory and regulatory framework support a deferential standard when the hearing officer reviews

SUPREME COURT
OF
NEVADA

(O) 1947A

an agency's determination that an employee's termination is in the good of the public service.

The confusion over the appropriate standard of review stems from a trio of cases decided between 1989 and 1995, all of which involved disciplinary decisions by the Nevada Department of Prisons (NDOP): *Knapp*, 111 Nev. 420, 892 P.2d 575; *State, Department of Prisons v. Jackson*, 111 Nev. 770, 895 P.2d 1296 (1995); and *Dredge*, 105 Nev. 39, 769 P.2d 56. In *Dredge*, the earliest of those cases, this court explained that "[i]t was the task of the hearing officer to determine *whether NDOP's decision to terminate Dredge was based upon evidence that would enable NDOP to conclude that the good of the public service would be served* by Dredge's dismissal." 105 Nev. at 42, 769 P.2d at 58 (emphases added). That explanation implied deference to the agency and properly recognized the subjective concept of "the good of the public service" as well as the relevant perspective of the agency. The court then referenced NAC 284.650(3), addressing discipline for employees in institutions administering a security program, to support its statement that "[*m*]*oreover*, the critical need to maintain a high level of security within the prison system entitles the appointing authority's decision to deference by the hearing officer whenever security concerns are implicated in an employee's termination." 105 Nev. at 42, 769 P.2d at 58 (emphasis added).

Our subsequent cases interpreted the above language from *Dredge* to mean that "[g]enerally, a hearing officer does not defer to the appointing authority's decision," *except* when "security concerns are implicated in an employee's termination." *Knapp*, 111 Nev. at 424, 892 P.2d at 577-78 (internal quotation marks omitted); *see also Jackson*, 111 Nev. at 773, 895 P.2d at 1298 ("Generally, we would defer to the hearing officer,

were it not for *Dredge*, which requires deference to the appointing authority in cases of breaches of security."). But *Dredge* implied deference to an agency's decision that termination was for the "good of the public service" and then merely emphasized the importance of deference in situations where "security concerns are implicated" by referencing a specific provision in the NAC. 105 Nev. at 42, 769 P.2d at 58. It did not create a broad rule that deference is generally not owed unless there are security concerns. And neither *Knapp* nor *Jackson* parsed out, as we do today, the difference between the standard of review as to whether the employee committed the charged violation, *see* NAC 284.798 (indicating a de novo standard of review applies as to whether a violation occurred), and the standard of review as to whether the agency's termination decision was reasonable and with just cause, *see* NRS 284.390(1), (7) (recognizing a deferential standard of review as to the agency's disciplinary action). Therefore, we overrule those parts of *Knapp* and *Jackson*, and their progeny, which suggest that the hearing officer decides de novo whether the employee's termination serves the "good of the public service."

When a classified employee requests a hearing to challenge an agency's decision to terminate her as a first-time disciplinary measure, the hearing officer "determine[s] the reasonableness" of the agency's decision by conducting a three-step review process. NRS 284.390(1). First, the hearing officer reviews de novo whether the employee in fact committed the alleged violation. *See* NAC 284.798. Second, the hearing officer determines whether that violation is a "serious violation[ ] of law or regulations" such that the "severe measure[ ]" of termination is available as a first-time disciplinary action. NRS 284.383(1). If the agency's published regulations prescribe termination as an appropriate level of discipline for a first-time

offense, then that violation is necessarily "serious" as a matter of law. NRS 284.383(1); NAC 284.646(1). Third and last, the hearing officer applies a deferential standard of review to the agency's determination that termination will serve "the good of the public service." NRS 284.385(1)(a). The inquiry is not what the hearing officer believes to be the good of the public service, but whether it was reasonable for the agency to "consider[ ] that the good of the public service w[ould] be served" by termination. *Id.* Although that inquiry affords deference to the agency's decision, it "does not automatically mandate adherence to [the agency's] decision" as "[d]eferential review is not no review, and deference need not be abject." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (internal quotation marks omitted); *see also Port of Jacksonville Mar. Ad Hoc Comm., Inc. v. U.S. Coast Guard*, 788 F.2d 705, 708 (11th Cir. 1986) (recognizing that a deferential standard of review is "not [a] rubber stamp [of] the action of the agency; rather, [the reviewing entity] must satisfy itself that the agency has articulated a rational connection between the facts found and the choice made" (internal quotation marks omitted)).

Here, the hearing officer correctly applied de novo review to find that O'Keefe repeatedly violated DMV Prohibition G(1). But the hearing officer acted arbitrarily or capriciously in concluding that O'Keefe's violations were not "serious violation[s] of law or regulation[s]," because the DMV's regulations categorize a violation of Prohibition G(1) as a first-time terminable offense.

The hearing officer again acted arbitrarily or capriciously in reviewing de novo the DMV's determination that termination served the "good of the public service." NRS 284.385(1)(a). Substantial evidence reveals that the DMV's decision was reasonable. First, the delay between

SUPREME COURT
OF
NEVADA

(O) 1947A

13

O'Keefe's violations and the DMV's investigation into her conduct was reasonable in light of O'Keefe's promotion out of the DMV because the DMV had no authority over her as an employee and therefore no cause to investigate her conduct. Second, while O'Keefe was a long-term state employee with no record of previous violations, termination of such an employee may still be appropriate if the employee commits an offense that warrants termination for a first-time violation. And although DMV employees may not have been terminated for similar conduct before 2011, the evidence shows that after 2011, DMV employees signed the DMV director's memorandum indicating that they understood that violations of Prohibition G(1) could result in termination and four other employees had been terminated for violating that provision. In sum, the evidence does not show that the agency acted unreasonably when it determined that termination served "the good of the public service." Thus, we affirm the district court's decision to vacate the hearing officer's decision.

## CONCLUSION

The district court correctly held that the hearing officer applied the wrong standard of review to the DMV's disciplinary decision to terminate O'Keefe's employment. A hearing officer reviews de novo whether a classified employee committed the alleged violation, but the hearing officer applies a deferential standard of review to the agency's

decision to terminate. The hearing officer did not apply that deferential standard here. Accordingly, we affirm the district court's order granting the DMV's petition for judicial review and setting aside the hearing officer's decision.

_____, J.
Stiglich

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

 

PICKERING, J., concurring:

I concur in the majority's decision to reverse the hearing officer's reinstatement of O'Keefe's employment, but I would not create a new three-step test or overrule the precedent set in *Dredge, Knapp,* and *Jackson.* A hearing officer's job is "to determine the reasonableness" of the state employee's dismissal, NRS 284.390(1), and to reinstate the employee if the dismissal was "without just cause," NRS 284.390(7). The "hearing officer does not defer to the appointing authority's decision," but instead takes a "new and impartial view of the evidence." *Knapp v. State Dep't of Prisons*, 111 Nev. 420, 424, 892 P.2d 575, 577, 578 (1995) (quoting *Dredge v. State Dep't of Prisons*, 105 Nev. 39, 48, 769 P.2d 56, 62 (1989) (Springer, J., dissenting)). We then review the hearing officer's decision as a final agency action under NRS 233B.135. NRS 284.390(9). The party seeking reversal bears the burden to show that the hearing officer's decision was invalid for one of the reasons in NRS 233B.135(3). I would reverse the hearing officer because the decision to reinstate O'Keefe's employment was contrary to NRS 284.383(1) and NAC 284.646(1), *see* NRS 233B.135(3)(a), and "[a]ffected by other error of law," NRS 233B.135(3)(d).

The hearing officer was incorrect, as a matter of law, when she determined that O'Keefe's offenses required progressive discipline because they were not serious violations of law or regulations. NRS 284.383(1) directs the Personnel Commission to "adopt by regulation a system for administering disciplinary measures against a state employee in which, except in cases of serious violations of law or regulations, less severe measures are applied at first, after which more severe measures are applied only if less severe measures have failed to correct the employee's deficiencies." Among the progressive-discipline regulations the Personnel

Commission adopted to fulfill this statutory mandate is NAC 284.646(1), which provides: "An appointing authority may dismiss an employee for any cause set forth in NAC 284.650 if: (a) The agency with which the employee is employed has adopted any rules or policies which authorize the dismissal of an employee for such a cause; or (b) The seriousness of the offense or condition warrants such dismissal." What this regulation says is that an agency may terminate an employee for an offense without engaging progressive discipline in two instances: (1) when it has rules and policies in place that state termination will result from that offense; or (2) when the offense otherwise constitutes a "serious violation[ ] of law or regulations."

The DMV's Prohibition G(1) is a policy approved by the Personnel Commission that authorizes the DMV to bypass progressive discipline and dismiss an employee who makes unauthorized use of DMV data. O'Keefe violated Prohibition G(1) on at least ten occasions between July and November of 2012. As a matter of law, O'Keefe's termination for those offenses is reasonable. *See* NAC 284.646(1)(a).

Though O'Keefe argued that the DMV did not enforce Prohibition G(1), pointing to an incident from before 2011, the substantial evidence does not support that O'Keefe was treated dissimilarly from other employees. Where an employer selectively enforces a termination policy, firing some but merely suspending or reprimanding others who commit the same offense, it becomes a question of fact whether just cause supports termination. *See* Restatement of Employment Law § 2.04 cmt. e, illus. 5 (Am. Law Inst. 2015) (noting that an employer's tolerance "of comparable conduct by other employees is relevant to whether there is cause to terminate [the targeted employee's] employment and raises an issue for the trier of fact"). But the DMV terminated all four other employees (or allowed

them to resign) who violated Prohibition G(1) after signing the director's memo in 2011, which reminded employees about the Prohibition and that termination could follow from unauthorized data retrievals. Where an employer consistently enforces a policy approved by the Personnel Commission that requires termination, termination without progressive discipline is reasonable as a matter of law.

The analysis should end there. This appeal does not implicate the rule in *Knapp* because in *Knapp*, all parties, including the appointing agency, conceded that the offenses the employee committed did not warrant termination. 111 Nev. at 425, 892 P.2d at 578. In its rush to overrule *Knapp*, the majority misses the key point: A hearing officer decides questions of fact and mixed questions of fact and law that may include, but often go beyond, whether the employee committed the offense charged. For example, had O'Keefe presented substantial evidence that, after the director's 2011 memo, the DMV selectively enforced Prohibition G(1), whether just cause existed for her termination would have presented a mixed question of fact and law for the hearing officer to take evidence on and decide. *See* Restatement of Employment Law, *supra*, § 2.04 cmt. e, illus. 5. Under NRS 284.390(9), a hearing officer's decision is reviewed under NRS Chapter 233B. And, under NRS 233B.135(3), the reviewing court must defer to the hearing officer's decision on questions of fact and mixed questions of fact and law. *Knapp*, 111 Nev. at 423, 892 P.2d at 577 (recognizing that the district court gives deference to "an agency's conclusions of law [that] are closely related to the agency's view of the facts") (internal quotation omitted). Our review in that instance is deferential, not to the appointing agency but to the hearing officer. NRS Chapter 233B mandates this

deference to the hearing officer, as our prior case law recognizes. *Id.* at 423-25, 892 P.2d at 577-78; *Dredge*, 105 Nev. at 43, 769 P.2d at 58-59.

By reaching out to decide an issue not presented by this appeal, the majority departs from clear statutory mandate and, in dictum, unnecessarily overrules existing precedent, adding confusion to this area of the law. I would resolve this case as the district court did and hold that the hearing officer committed an error of law in second-guessing the DMV Prohibition G(1)'s policy decision as to the seriousness of a DMV employee's unauthorized computer access. I therefore concur in the decision to reverse the hearing officer but only because of the legal error the hearing officer committed when she decided that O'Keefe's offenses were not sufficiently serious violations of law or regulations to justify termination. I do not ascribe to the majority's new three-step process for review of an employer's disciplinary actions, and would not turn away from our prior cases outlining a hearing officer's duties to provide an independent, fair, and impartial review of disciplinary actions against state employees.

_____, J.
Pickering

