# IN THE SUPREME COURT OF THE STATE OF NEVADA

STATE OF NEVADA OFFICE OF THE
MILITARY,
Appellant,
vs.
WILLIAM SIMPSON,
Respondent.

No. 72618

**FILED**

DEC 11 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF REVERSAL

This is an appeal from a district court order denying a petition for judicial review in an employment matter. First Judicial District Court, Carson City; James Todd Russell, Judge.

In June 2006, appellant State of Nevada, Office of the Military (OOM) hired respondent William Simpson as a military security officer. Simpson's work evaluations always met or exceeded performance standards, and he was never subject to discipline for violating any of OOM's rules or regulations.

In July 2014, a military officer filed a complaint with OOM alleging a hostile work environment caused by sexual harassment. In particular, the complainant stated that other military officers were making sexual comments and innuendos while at work. In response, Provost Marshal Kolvet, a senior military police officer, issued a letter of instruction stating that all sexual comments or innuendos in the workplace were unacceptable and any occurrences of such behavior would be subject to administrative action. All of the military officers, including Simpson, signed a form indicating that they received and understood the letter of

18- 90 F/53

instruction. The complainant reported that Kolvet's letter had resolved his issues and that his colleagues were no longer making sexual comments at work.

In March 2015, Simpson was promoted to a supervisory position as chief of security. In June 2015, Simpson issued a letter to subordinate military officers stating that "[t]he State of Nevada has a 'zero tolerance' policy for sexual harassment, inappropriate comments, behavior to include racial remarks, religious persecution, sexual comments regarding same sex, sexual interaction or any other offensive conduct, behavior or material displayed on computers or personal devices." During this approximate time, a different military officer filed a complaint alleging that supervisors were punishing him for minor logbook infractions while failing to investigate serious allegations of sexual harassment. The complaint prompted the Nevada Department of Administration, Division of Human Resource Management (DHRM) to conduct a sexual harassment investigation. The complaint also prompted a federal investigation into the allegation that employees were using federally owned computers to download and view pornographic material.

The DHRM investigation revealed that OOM had a longstanding history of condoning sexual harassment. The investigation also elicited statements from subordinate employees indicating that Simpson engaged in sexual harassment for the past ten years. As a result of the investigation's findings, the DHRM recommended that all military officers complete sexual harassment training.

The federal investigation revealed that four employees possessed pornographic material on their federally owned computers. Consequently, OOM terminated military officer Robert Pool, after it found

out that he used his federally owned computer to view hundreds of pornographic images while at work.[1] Pool challenged his termination by alleging that his supervisor, Simpson, sent him an image of a nude male's genitalia from his personal cell phone back in March 2015. Pool provided OOM with a copy of the text message containing the image, and thus, an investigation into Pool's allegation was initiated.

Initially, OOM did not believe that it could discipline Simpson because he sent the image from his personal cell phone. However, the investigation revealed that Simpson sent the image while he was at work, and after consulting with the district attorney, OOM learned that pursuant to NAC 284.646(2)(a), an employee can be immediately dismissed for intentionally viewing or distributing pornographic material on the work premises. OOM believed Simpson's conduct violated NAC 284.646(2)(a) and OOM's Prohibitions and Penalties (3)(B)(2) "Misconduct of a supervisor because of prejudice, anger or other unjustifiable reason."

Simpson initially denied sending the image to Pool after being confronted by Kolvet, but subsequently admitted that he sent the image to Pool in a joking nature. A pre-disciplinary hearing was held for Simpson. The pre-disciplinary hearing officer concluded that the language in NAC 284.646 and OOM's Prohibitions and Penalties gave OOM discretion to determine the appropriate level of discipline, and termination was justifiable based on Simpson's actions and supervisory role. OOM's Administrator decided to terminate Simpson, effective March 2016,

---

[1]Concerning the other three military officers, one officer was already no longer employed with OOM, one officer resigned after receiving the notice of investigation, and one officer was found that the images on his computer did not constitute pornographic material.

reasoning that Simpson was in a supervisory position and OOM had a zero tolerance policy for sexual harassment.

Simpson requested a hearing to challenge OOM's decision to terminate his employment. Following the hearing, the hearing officer overturned Simpson's termination. The hearing officer described his duty "to insure that the Employer did not act arbitrarily or capriciously, thus abusing its discretion." In addition, the hearing officer stated that it is his duty "to determine whether the action of the employer in disciplining the employee was based on evidence that would show that the good of the public service would be served by such discipline." Lastly, the hearing officer cited *Knapp v. State Department of Prisons*, 111 Nev. 420, 892 P.2d 575 (1995), to assert the proposition that he is "to make an independent determination as to whether there is sufficient evidence showing that the discipline would serve the good of the public service."

The hearing officer found that "[t]he reliable, substantial and probative evidence establishes that on March 5, 2015 [Simpson] sent a text message from his private cell phone of a picture depicting a nude human male with the male's genitals in full view to a subordinate male employee while on the work premises." The hearing officer further found that Simpson's act violated NAC 284.646(2)(a) and OOM's Prohibitions and Penalties (3)(B)(2).

Despite finding that Simpson committed a terminable offense, the hearing officer concluded that written reprimand would be more appropriate. The hearing officer found that the image did not become an issue until nine months after it was sent. Further, the hearing officer found that termination in this case was inconsistent with progressive discipline pursuant to NRS 284.383. In particular, the hearing officer stated that

Simpson "has had an otherwise unblemished seventeen (17) year career in law enforcement beginning with his employment with the Washoe Tribe Police Department in 1999." Thus, the hearing officer concluded that termination was unreasonable and did not serve the good of the public service. The hearing officer reinstated Simpson to his position with back pay.

OOM petitioned the district court for judicial review. The district court denied the petition, concluding that the hearing officer did not have to give deference to OOM's disciplinary decision, and the hearing officer's decision overturning Simpson's termination was proper. This appeal followed.

*This appeal is moot*

Simpson argues that the instant appeal is moot because his employment position was subsequently eliminated. OOM disagrees by arguing that Simpson received back pay and retains reemployment rights, and that should this court reverse the hearing officer's decision, OOM could start the process of recovering the back pay and Simpson would not have a right of reemployment to a state job.[2] Thus, OOM argues that an actual or live controversy continues to exist between the parties in this case.

---

[2]NRS 284.390(7) provides that a hearing officer must award an employee full pay for the period of dismissal if the hearing officer concludes that the employee was improperly dismissed. However, because the Legislature has not explicitly stated that an employer can recoup unwarranted back pay, we conclude that OOM is not entitled to recoup back pay even if this court concludes that Simpson's dismissal was proper. *See Ransier v. State Indus. Ins. Sys.*, 104 Nev. 742, 746-47, 766 P.2d 274, 276-77 (1988) (providing that an employer could not recoup funds paid to an employee, which were later found to be unwarranted on appeal because there is no statutory authority within the workers' compensation act that authorizes such action).

This court generally will not decide moot cases. *Cashman Equip. Co. v. W. Edna Assocs., Ltd.*, 132 Nev., Adv. Op. 69, 380 P.3d 844, 853 (2016). "A case is moot if it seeks to determine an abstract question which does not rest upon existing facts or rights." *Id.* (internal quotation marks omitted). Here, this appeal was rendered moot when Simpson became ineligible for reemployment because a year had passed since his lay off date. *See* NAC 284.630(1) (an employee that was laid off will "be placed on the statewide reemployment list");NAC 284.630(7) ("Each person on the list retains reemployment eligibility for 1 year after the layoff date."). Because Simpson was laid off on March 12, 2017, his reemployment rights expired on March 12, 2018.

However, "[e]ven when an appeal is moot, . . . we may consider it if it involves a matter of widespread importance that is capable of repetition, yet evading review." *Personhood Nev. v. Bristol*, 126 Nev. 599, 602, 245 P.3d 572, 574 (2010). Because a laid-off employee's reemployment rights last for the duration of one year, it is possible, as in this case, that the case will never make it through the judicial review process for full resolution of the underlying issue. Moreover, determining which standard of review a hearing officer should apply when reviewing an employer's termination decision of a state classified employee involves an issue of widespread importance. Accordingly, we hold that the exception to the mootness doctrine applies.

*Standard of review*

"When a decision of an administrative body is challenged, the function of this court is identical to that of the district court. It is to review the evidence presented to the administrative body and ascertain whether that body acted arbitrarily or capriciously, thus abusing its discretion."

*Gandy v. State, Div. of Investigation & Narcotics*, 96 Nev. 281, 282, 607 P.2d 581, 582 (1980). Pursuant to the arbitrary and capricious standard, this court will defer to the hearing officer's "conclusions of law [that] are closely related to [the hearing officer]'s view of the facts," but we will decide "pure legal questions" de novo. *Knapp v. State, Dep't of Prisons*, 111 Nev. 420, 423, 892 P.2d 575, 577 (1995).

*The hearing officer abused his discretion in overturning Simpson's termination*

OOM argues that the hearing officer exceeded his statutory authority in overturning Simpson's termination. OOM also contends that the hearing officer's decision was based on extraneous facts and disregarded substantial evidence, and thus, was arbitrary and an abuse of discretion. We agree.

This court recently addressed the appropriate standard of review a hearing officer applies when reviewing an employer's termination of an employee. *See O'Keefe v. State, Dep't of Motor Vehicles*, 134 Nev., Adv. Op. 92, ___ P.3d ___, ___ (2018). We determined that "when a classified employee requests a hearing to challenge an agency's decision to terminate [him or her] as a first-time disciplinary measure, the hearing officer 'determines the reasonable' of the agency's decision by conducting a three-step review process." *Id.* (citing NRS 284.390(1)). Accordingly, the hearing officer should engage in the following analysis:

> First, the hearing officer reviews de novo whether the employee in fact committed the alleged violation. *See* NAC 284.798. Second, the hearing officer determines whether that violation is a "serious violation of law and regulations" such that the "severe measure" of termination is appropriate as a first-time disciplinary action. NRS 284.383(1); NAC 284.646(1). If the agency's published regulations prescribe termination as an

> appropriate level of discipline for a first-time offense, then that violation is necessarily "serious" as a matter of law. NRS 284.383(1). Third and last, the hearing officer applies a deferential standard of review to the agency's determination that termination will serve "the good of the public service." NRS 284.385(1)(a). The inquiry is not what the hearing officer believes to be the good of the public service, but rather whether it was reasonable for the agency to "consider that the good of the public service would be served" by termination. *Id.*

*Id.*

Here, the hearing officer correctly applied de novo review to find that Simpson violated NAC 284.646(2)(a) and OOM's Prohibitions and Penalties (3)(B)(2). Although OOM's Prohibitions and Penalties (3)(B)(2) is not categorized as a first-time terminable offense, the hearing officer abused his discretion when it found that Simpson's violations did not warrant termination because NAC 284.646(2)(a) provides that "[a]n appointing authority may dismiss an employee for . . . [i]ntentionally viewing or distributing pornographic material at the premises of the workplace . . . ." Thus, as a matter of law, Simpson's conduct was "serious." *O'Keefe*, 134 Nev., Adv. Op. 92, ___ P.3d at ___.

The hearing officer also abused his discretion when he applied de novo review to overrule OOM's determination that termination served the "good of the public service." NRS 284.385(1)(a). The hearing officer disregarded substantial evidence and instead erroneously focused on the delay between Simpson's violation and OOM's investigation, and the fact the Simpson was a long-term state employee with no record of previous violations. However, the delay was reasonable because OOM did not learn about the transmission of the image until nine or ten months after it was

sent. Moreover, this court has stated, "[t]ermination of [a long-term state employee with no record of previous violations] may still be appropriate if the employee commits an offense that is punishable by termination for a first-time violation." *O'Keefe*, 134 Nev., Adv. Op. 92, ___ P.3d at ___. Therefore, neither of the facts the hearing officer relied on provided sufficient bases for determining that Simpson's termination was unreasonable. Rather, the substantial evidence showed that OOM believed that termination was necessary because it did not want to set a precedent in its work place that continued to condone sexual behavior. As an employer, OOM is in a better position than the hearing officer to determine what is best for the public service.

Accordingly, we

ORDER the judgment of the district court REVERSED, with direction to remand this matter to the hearing officer for proceedings consistent with this order.



_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. James Todd Russell, District Judge
       Debbie Leonard, Settlement Judge
       Attorney General/Carson City
       Attorney General/Reno
       Attorney General/Las Vegas
       Dyer, Lawrence, Penrose, Flaherty, Donaldson & Prunty
       Carson City Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., concurring:

The new test announced in *O'Keefe v. State, Department of Motor Vehicles*, 134 Nev., Adv. Op. 92, ___ P.3d ___, ___ (2018), supports my colleagues' decision to reverse Simpson's reinstatement and back-pay award. Once the hearing officer confirmed that Simpson violated NAC 284.646(2)(a), which authorizes an agency to bypass progressive discipline and terminate an employee for a first offense, *O'Keefe's* dicta, if not its holding, required him to defer to the agency's judgment that Simpson's termination would serve the good of the public service. *Id.* I write separately to emphasize that this case illustrates how *O'Keefe*, for which remittitur has not yet issued, improvidently reduces the hearing officer's independent role in ensuring fair and impartial discipline of a state employee to that of a functionary.

The Office of the Military terminated Simpson for sending a picture of a naked man through text message to his subordinate and long-time friend, Robert Pool. The text read "Sup playa," followed by an image of a naked man sitting down, followed by the message "Suuuuuuup." Pool was apparently not offended by the picture, and the incident went unnoticed for nine months until Pool, facing termination for viewing hundreds of pornographic images on his work computer, showed Simpson's text to investigators. Simpson admitted to sending the text from his personal cellphone to Pool's personal cellphone. Pool received the text while off-duty, but Simpson sent the message while sitting in his car in the OOM's parking lot during a work break. Simpson had no other disciplinary record in his ten years at the OOM.

The hearing officer reinstated Simpson's employment, determining that the offense warranted progressive discipline, not termination. In my judgment, the hearing officer properly exercised his role by providing a "new and impartial view of the evidence" and did not need to defer to the OOM's decision to dismiss Simpson. *See Knapp v. State, Dep't of Prisons*, 111 Nev. 420, 424, 892 P.2d 575, 577-78 (1995) (quoting *Dredge v. State, Dep't of Prisons*, 105 Nev. 39, 48, 769 P.2d 56, 62 (1989) (Springer, J., dissenting)); *State, Dep't of Prisons v. Jackson*, 111 Nev. 770, 773, 895 P.2d 1296, 1298 (1995) (recognizing that deference to an agency's termination decision would "undermine the job security of otherwise permanent employees, who deserve to have a fair and independent evaluation of the agency head's termination decision"). Unlike *O'Keefe*, where the employee committed a prohibited act for which DMV policy mandated termination—and other employees had been terminated for the same offense—the OOM's internal policies permitted but did not mandate termination for what Simpson did. 134 Nev., Adv. Op. 92, ___ P.3d at ___. *See* NAC 284.646(a) ("An appointing authority *may* immediately dismiss an employee for . . . [i]ntentionally viewing or distributing pornographic material at the premises of the workplace") (emphasis added). In the hearing officer's view, it was an afterthought, apparently to justify Pool's dismissal for more egregious violations on his work computer, to consider Simpson's text message from his personal cellphone to Pool's, who was off duty, as a terminable offense under NAC 284.646(2)(a).

*Knapp*, *Dredge*, and *Jackson* afforded the hearing officer the latitude to determine that, even though Simpson technically violated NAC 284.646(2)(a), the offense did not warrant termination. While we as a reviewing court might have decided the matter differently, the hearing

officer listened to the witnesses, reviewed the evidence, and decided progressive discipline short of termination was warranted. The hearing officer had authority to make this determination which, under *Knapp*, *Dredge*, and *Jackson*, we should review deferentially and uphold. The effect of the rule in *O'Keefe*, however, is that the hearing officer must treat Simpson's violation of NAC 284.646(2)(a) the same as Pool's violation of NAC 284.646(2)(a), because the OOM considered it for the good of the public service to terminate both employees. *See O'Keefe*, 134 Nev., Adv. Op. 92, ___ P.3d at ___ (allowing the hearing officer to review de novo whether the employee committed the violation, but requiring the hearing officer to defer to the agency's determination that dismissal for that violation will serve the good of the public service). But in the hearing officer's view, possessing hundreds of pornographic images on a work computer (Pool) is not the same as a 10-year employee with no prior discipline sending a picture of a naked man to an off-duty coworker and long-time friend in jest, from a personal cell phone to a personal cell phone, and while on a break from work (Simpson). *O'Keefe* does not properly account for these differences and the reality that the level of discipline corresponding to a violation of policy, regulation, or law often presents a mixed question of law and fact for which the hearing officer should be given the flexibility to ensure that a state employer's disciplinary actions are consistent and proportionate to the facts of each case.

This court should hesitate to reverse a hearing officer when he or she provides the independent, fair, and impartial review of a state employer's disciplinary actions for which our statutes provide. *See Knapp*, 111 Nev. at 423-24, 892 P.2d at 577-78; *Jackson*, 111 Nev. at 773, 895 P.2d at 1298; NRS 233B.135(3). While *O'Keefe* supports reversal, assuming the

remittitur in that case issues without withdrawal or amendment of the opinion, I reiterate my concern that *O'Keefe* represents an unsound departure from our statutes and case precedent.

_Pickering_____, J.
Pickering