135 Nev., Advance Opinion 12

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA, DEPARTMENT OF CORRECTIONS, Appellant, vs. BRIAN LUDWICK, AN INDIVIDUAL, Respondent. | No. 73277 <br><br> **FILED** <br><br> MAY 02 2019 <br><br> ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ |

Appeal from a district court order denying a petition for judicial review in an employment matter. Eighth Judicial District Court, Clark County; Nancy L. Allf, Judge.

*Reversed and remanded.*

Aaron D. Ford, Attorney General, and Michelle Di Silvestro Alanis, Deputy Attorney General, Carson City,
for Appellant.

Law Office of Daniel Marks and Daniel Marks and Adam Levine, Las Vegas,
for Respondent.

BEFORE HARDESTY, STIGLICH and SILVER, JJ.

*OPINION*

By the Court, SILVER, J.:

After appellant Nevada Department of Corrections (NDOC) terminated respondent Brian Ludwick's employment for a first-time offense, Ludwick was reinstated by a hearing officer on administrative appeal. At issue is whether the hearing officer erred in finding that NDOC's

19-19270

decision to terminate was improper. We hold that the hearing officer erred by relying, even if only in part, on a regulation that the State Personnel Commission (Commission) had not approved as statutorily required. The hearing officer also did not properly consider, as addressed in our recent opinion *O'Keefe v. State, Department of Motor Vehicles*, 134 Nev., Adv. Op. 92, 431 P.3d 350 (2018),[1] whether Ludwick's actions constituted violations of the valid regulations NDOC charged him with violating and, if so, whether those violations warranted termination as a first-time disciplinary measure. Accordingly, we reverse the district court's denial of NDOC's petition for judicial review and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

Ludwick worked for NDOC as a correctional officer. During his employment, he qualified for leave under the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 (2012), due to hypertension. In the more than two years Ludwick worked for NDOC, he had no disciplinary history.

On the day of the incident for which Ludwick was terminated, Ludwick was assigned to Unit 1 at the correctional facility. Unit 1 houses inmates returning from solitary confinement and tends to have more violent incidents than any other unit. The mandated minimum staffing for Unit 1 at the time was two officers, but three officers were assigned to Unit 1 on that day. During his shift, Ludwick attempted to contact his supervisor to inform him that he was not feeling well, but could not get ahold of him. Ludwick then left Unit 1, without prior permission, to speak to his

---

[1]We recognize that the parties, the hearing officer, and the district court did not have the benefit of the *O'Keefe* opinion when addressing these issues.

supervisor in person. Although the parties dispute the specifics of the conversation that ensued, Ludwick ultimately left work on FMLA leave. The supervisor subsequently generated a report stating that Ludwick neglected his duty and abandoned his post without authorization when he left Unit 1.

After an internal investigation into the supervisor's report, NDOC charged Ludwick with violating NAC 284.650(1) (activity incompatible with employee's conditions of employment), NAC 284.650(3) (violating or endangering the security of the institution), NAC 284.650(7) (inexcusable neglect of duty), and NDOC's Administrative Regulation (AR) 339.05.15 (neglect of duty—leaving an assigned post while on duty without authorization of a supervisor). NDOC initially recommended a five-day suspension but ultimately decided to terminate Ludwick for consistency purposes, as other employees who had violated AR 339 were terminated.

Ludwick administratively challenged NDOC's decision and, following a hearing, the hearing officer overturned the termination. The hearing officer agreed with NDOC that "Ludwick engaged in inexcusable neglect by leaving his post without the prior permission of a supervisor." The hearing officer found that termination of employment, however, was too harsh a penalty, as Ludwick had no prior discipline and no incidents arose in Unit 1 after Ludwick left. The hearing officer also disagreed with NDOC's argument that Ludwick's leaving Unit 1 without prior approval constituted a serious security risk, as the minimum staffing requirements for the unit were still met and no one was assigned to replace Ludwick in Unit 1 after he left for the day. Finding that "some discipline" was still required because Ludwick "in fact violate[d] a very important safety and security policy by leaving his post without prior authorization from a

Supreme Court
OF
Nevada

(O) 1947A

3

supervisor," the hearing officer ordered that Ludwick be suspended for not more than 30 days. The district court denied NDOC's subsequent petition for judicial review and this appeal followed.

## DISCUSSION

"When reviewing a district court's denial of a petition for judicial review of an agency decision, this court engages in the same analysis as the district court." *Taylor v. State, Dep't of Health & Human Servs.*, 129 Nev. 928, 930, 314 P.3d 949, 951 (2013) (quoting *Rio All Suite Hotel & Casino v. Phillips*, 126 Nev. 346, 349, 240 P.3d 2, 4 (2010)). Thus, pursuant to Nevada's Administrative Procedure Act (NAPA), we review the hearing officer's decision to determine whether it is clearly erroneous, arbitrary or capricious, or affected by an error of law. NRS 233B.135(3). In doing so, we review questions of law de novo but "defer[ ] to [a hearing officer's] interpretation of its governing statutes or regulations if the interpretation is within the language of the statute." *Taylor*, 129 Nev. at 930, 314 P.3d at 951 (quoting *Dutchess Bus. Servs., Inc. v. Nev. State Bd. of Pharmacy*, 124 Nev. 701, 709, 191 P.3d 1159, 1165 (2008)).

*The hearing officer's review of NDOC's decision to terminate*

Initially, the parties present arguments regarding the deference the hearing officer owed to NDOC's decisions. We recently addressed that issue in *O'Keefe v. State, Department of Motor Vehicles*, 134 Nev., Adv. Op. 92, 431 P.3d 350 (2018), and concluded that the hearing officer conducts a de novo review of "whether the employee *in fact* committed the charged violation." *Id.* at 355. And, when reviewing an agency's decision that termination will serve the good of the public service, the hearing officer is to employ a deferential standard. *See id.* at 355-56 (overruling *Dredge v. State, Department of Prisons*, 105 Nev. 39, 769 P.2d 56 (1989), *State, Department of Prisons v. Jackson*, 111 Nev. 770, 895 P.2d

Supreme Court
OF
Nevada

(O) 1947A

1296 (1995), and their progeny to the extent they "suggest that the hearing officer decides de novo whether the employee's termination serves the good of the public service" (internal quotation marks omitted)). *O'Keefe* did not directly address, however, whether the hearing officer owes deference to an employer's decision that a violation is so serious that it warrants termination for a first-time offense when the agency does not have a published regulation to that effect in place. *See id.* at 356 (providing that when a published regulation prescribes termination for a first-time offense, "then that violation is necessarily 'serious' as a matter of law").

Examining *O'Keefe*'s reasoning for its limited overruling of *Dredge* and *Jackson* demonstrates that, even when there is no published regulation in place, the hearing officer should give deference to an employer's decision that a violation is so serious it warrants termination for a first-time offense. *O'Keefe* explained that while those previous cases emphasized the need for deference to the employer when security concerns were implicated, the cases "did not create a broad rule that deference is generally not owed unless there are security concerns." *Id.* *O'Keefe* then recognized that a hearing officer generally owes deference "as to whether the agency's termination decision was reasonable and with just cause." *Id.* (citing NRS 284.390(1), (7)). Because the determination of whether a violation is so serious that it warrants termination for a first-time offense is part of the hearing officer's consideration of whether the agency's decision to terminate was reasonable and with just cause, *O'Keefe* mandates that the hearing officer defer to the employer's decision. *See id.*

*The hearing officer erred by relying on an invalid regulation in reviewing the termination decision*

A hearing officer's review of an agency's decision to terminate an employee as a first-time disciplinary measure requires a three-step process. *Id.* at 356 (citing NRS 284.390(1)). "First, the hearing officer reviews de novo whether the employee in fact committed the alleged violation." *Id.* (citing NAC 284.798). The hearing officer next "determines whether that violation is a 'serious violation[ ] of law or regulations' such that the 'severe measure[ ]' of termination is available as a first-time disciplinary action." *Id.* (alterations in original) (quoting NRS 284.383(1)). "If the agency's published regulations prescribe termination as an appropriate level of discipline for a first-time offense, then that violation is necessarily 'serious' as a matter of law." *Id.* (quoting NRS 284.383(1) and citing NAC 284.646(1)). A violation is also "serious" as a matter of law if the agency has a policy that prescribes termination as an appropriate level of discipline for a first-time offense. *See id.*; *see also* NAC 284.646(1)(a). Where no such regulation or policy is in place, the hearing officer applies a deferential standard of review to an agency's determination that "[t]he seriousness of the offense or condition warrants such dismissal." NAC 284.646(1)(b); *see O'Keefe*, 134 Nev., Adv. Op. 92, 431 P.3d at 356. "Third and last, the hearing officer applies a deferential standard of review to the agency's determination that termination will serve 'the good of the public service.'" *O'Keefe*, 134 Nev., Adv. Op. 92, 431 P.3d at 356 (quoting NRS 284.385(1)(a)).

All of the violations listed in Ludwick's specificity of charges were based on the fact that he left Unit 1 without prior permission from his supervisor. Ludwick does not dispute that he left the unit without permission except to argue that he had implied permission to leave under

SUPREME COURT
OF
NEVADA

(O) 1947A

the FMLA. We disagree, as 29 C.F.R. § 825.303(c) (2018) provides that "[w]hen the need for leave is not foreseeable, an employee must comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances," and Ludwick did not demonstrate any unusual circumstances in this case. The question then becomes whether Ludwick leaving the unit without prior permission constitutes a violation of the NAC provisions and AR 339 as listed in the specificity of charges.

Addressing AR 339.05.15[2] first, the hearing officer determined that this regulation had to be approved by the Commission to be of any disciplinary effect. On appeal, NDOC asserts that the plain language in another statute, NRS 209.111, allows the Board of State Prison Commissioners (Board) to adopt administrative regulations regarding the labor of employees without the approval of the Commission and that AR 339 is therefore valid because it was approved by the Board.[3] We agree with Ludwick and the hearing officer, however, that the fact that the Commission never approved AR 339 makes it invalid and of no legal effect for purposes of employee discipline.

---

[2]The parties agree that the relevant version of AR 339.05.15 provided that a corrections officer leaving an assigned post without permission constituted inexcusable neglect of duty.

[3]NDOC also contends that it is exempted from the NAPA's statutes regarding the adoption of regulations. While the NAPA exempts NDOC from certain of its procedures, *see* NRS 233B.039(1)(b), NDOC is not exempt from the procedures regarding the adoption of regulations governing state personnel. *See* NRS 284.013 (exempting only certain state entities from NRS Chapter 284).

NRS 284.383(1) provides that the Commission must adopt, by regulation, "a system for administering disciplinary measures against a state employee." That system is set forth in NAC 284.638-.6563. The Commission also adopted NAC 284.742(1), which directs agencies to identify prohibited activities and possible violations and penalties and explain the discipline process for classified employees. Under that regulation, the agencies' policy must receive approval from the Commission:

> Each appointing authority shall determine, *subject to the approval of the Commission*, those specific activities which, for employees under its jurisdiction, are prohibited as inconsistent, incompatible or in conflict with their duties as employees. The appointing authority shall identify those activities in the policy established by the appointing authority pursuant to NRS 284.383.

(Emphasis added.) *See also* NRS 284.383(3) ("An appointing authority shall provide each permanent classified employee of the appointing authority with a copy of a policy *approved by the Commission* that explains prohibited acts, possible violations and penalties and a fair and equitable process for taking disciplinary action against such an employee." (emphasis added)). The foregoing law clearly demonstrates that the Commission's approval was required for any administrative regulation regarding an employee's discipline to have any force and effect.

We agree with the hearing officer that NDOC provided no evidence showing that the Commission approved AR 339. NDOC's argument that NRS 209.111 allows the Board to bypass the Commission's approval fails. Although that statute states that the Board "has full control of all . . . labor" of the NDOC, it is referring to inmate labor, rather than the governance of NDOC employees. *See State v. Hobart*, 13 Nev. 419, 420 (1878) (addressing the precursor to NRS 209.111, which specifically

 

referred to "prison labor"); *Hearing on S.B. 116 Before the Sen. Finance Comm.*, 59th Leg. (Nev., Feb. 28, 1977) (statement of Charles L. Wolff, Warden, Nevada State Prison) (explaining that the bill was intended to provide more effective educational and vocational training to inmates "so they are prepared to be placed effectively back into the community and earn a livelihood" without any mention of employee discipline). And, because the regulation was never approved by the Commission, the hearing officer correctly determined that it was invalid and could not form a basis for terminating Ludwick.

Despite the hearing officer's correct determination that AR 339 was invalid, the officer still relied on the regulation in order to understand "the expectations and duties as it relates to correctional officers being at their assigned post" and to determine whether Ludwick's actions constituted an inexcusable neglect of duty under NAC 284.650(7) and justified termination for the first offense. This is a clear error of law warranting remand—because the regulation is invalid, the hearing officer should not have relied on it for any purpose related to the disciplinary charges in this case. *See* NRS 233B.135(3)(d). On remand, the hearing officer must address whether Ludwick's actions of leaving his post without prior permission constitutes violations of the *valid* NAC provisions listed in his specificity of charges without any reliance on AR 339. And, if the hearing officer finds that Ludwick violated the relevant NAC provisions, the officer must then apply the remaining two steps outlined in *O'Keefe* to determine whether those violations warranted terminating Ludwick as a first-time disciplinary action. *See* 134 Nev., Adv. Op. 92, 431 P.3d at 356.

## CONCLUSION

Because the hearing officer committed legal error in relying on an invalid regulation to set aside Ludwick's termination, we reverse the district court's denial of NDOC's petition for judicial review. We therefore remand this matter to the district court so that it may grant NDOC's petition and remand the case to the hearing officer for further proceedings consistent with this opinion.

_____ , J.
Silver

We concur:

_____ , J.
Hardesty

_____ , J.
Stiglich

SUPREME COURT
OF
NEVADA

(O) 1947A